[Civ. No. 3741.   Fourth Dist.   Apr. 8, 1949.]

THE PEOPLE, Appellant, v. HYMAN FRANKENTHAL et al., Respondents.

Fred N. Howser, Attorney General, Charles W. Johnson and William L. Shaw, Deputy Attorneys General, for Appellant.

L. Kenneth Say for Respondents.

GRIFFIN, J.—Plaintiff and appellant, in 1942, brought this action against defendant and respondent to collect contributions and interest for tax alleged to be due from defendant in 1938, under the provisions of the California Unemployment Insurance Act (Stats. 1935, ch. 352, p. 1226, as amended, 3 Deering's Gen. Laws, Act 8780d, § 45.10). The action was tried and judgment rendered in favor of defendant in 1947. Plaintiff's appeal was perfected in 1948, and it now claims the original tax assessed, plus interest to date.

The only question presented is whether the finding of the court to the effect that defendant was not subject to the act and did not employ, between April 1st, 1938, and December 31, 1938, four or more individuals in 20 weeks, is supported by the evidence. Plaintiff, in its complaint, alleged otherwise.

In 1937, the firm of Richmond-Samuels operated a packing shed at Sanger. Their license to so operate was revoked and they were indicted for some crime. Frankenthal operated the

shed during the year 1938. The entire plant was destroyed by fire early in 1939. At the trial plaintiff took the position that the defendant was liable upon either of two theories: (1) That defendant had succeeded to the business of a person who was subject to the act; and (2) That independently of previous operations, defendant had employed, in 1938, four or more persons for 20 or more weeks during that year.

Plaintiff now concedes that the first theory, in the light of the evidence adduced at the trial, cannot be sustained, and it was abandoned. The record indicates and it was practically admitted at the trial that four or more persons were employed for *19* weeks during that year. The basic issue before the trial court was whether there was a *20th week* in which four or more persons were employed.

There is evidence that the first carload of grapes was shipped on July 28, 1938, and within 19 weeks thereafter the last shipments were made, and that the season started 10 days before that time, or July 18, 1938. Accompanying defendant's report of employees employed for the quarter ending September 30, 1938, defendant, on October 25, 1938, wrote to plaintiff that the company "only commenced operating July 1, 1938," and therefore "We are not enclosing a check covering the amount of taxes *show* on this report as we have not been operating with four or more employees for 20 weeks . . . Therefore no tax is due . . ."

Upon written demand of plaintiff, defendant, on April 12, 1939, furnished a report as to the number of persons employed by him during the year 1938, and of the particular weeks they were employed. This report shows that there were only 19 weeks when a number in excess of three per week were thus employed and that three were employed for the three weeks immediately preceding that period and two thus employed for the two weeks following that period. Apparently, plaintiff's auditor was not satisfied with this report and he set out to audit defendant's books. A fire had occurred and burnt most all of the records of the defendant. Investigators interviewed the workmen as to the length of time they worked for defendant and they took some statements from a few of them. They examined some of the time cards kept by defendant, which were recovered in his Texas office, but these cards only reflected employees' time after the middle of July and for the 19 weeks admitted. From these "records" and the additional statements of the employees, an audit was

made which determined that defendant was subject to the act. The auditor also found that defendant had succeeded to the business of a person or firm (Richmond-Samuels) who was subject to the act, and defendant was therefore also liable for this reason. (This claim has been abandoned on appeal.) Plaintiff billed defendant for the tax it found due from April 1, 1938, to December 31, 1938. Contributions claimed were $960.75, plus interest amounting to $769.56.

On June 3, 1947, plaintiff filed with the court in this action, a certificate to that effect, under section 45.1 of the act.

One of the unverified statements, dated February 1, 1940, signed by a former employee (Grass) and received in evidence in support of plaintiff's audit reads:

"I—state that I started to work 2 weeks before the regular packing season started—in 1938—and continued to work at least 1 week after the packing season closed. I further state that at least 3 other men were employed at the time above specified."

Four witnesses were produced by plaintiff who it claims worked during the 20th week. Grass, who signed the statement above mentioned, testified that he had been working for Richmond-Samuels; that he had been working for the defendant "about a week," "when the packing season started" and that he worked "about a week afterwards and that Mr. Stillwell, Mr. Lester, and I think . . . Hovsepian were working with me before the season started"; that as to the period after the close of the season he "imagined" two Lesters were working there; that Stillwell was there and he "thought" Wilbur was there, he was "not positive now"; that to the best of his knowledge Hovsepian was there. On cross-examination he stated he did not know the exact date he started to work or the date he quit; that he was only "giving his best guess"; that outside of Clyde Lester, Stillwell and himself, he was not certain.

Stillwell testified that he worked before the packing season started, he "judged about a week," and he worked about a week after the packing operations shut down, but did not remember the days when he worked; that he remembered Grass and Clyde Lester worked after the close of the season; that three or four of them worked but he didn't know who they were; that he did not know how long the packing season lasted.

E. Lester testified that he "thought he worked a few days" before the packing season started ". . . it might be a week,

it might be a shorter period''; that he was ''pretty positive'' Stillwell was there as well as one Jungbauer and also C. Lester; that as to Grass, he didn't know when he started; that whether they started to work after he came, he could not tell ''because I just don't remember.'' On cross-examination he testified he kept the time book but did not know the exact days when he went to work or when he quit, whether he worked 16 weeks or 19 weeks; that his time book burned up; that he knew it didn't take very long to close the shed up after the packing was over; that he subsequently filed a claim for unemployment insurance and was paid by the plaintiff but he did not know if it was for the year 1938; that he remembered he had a deduction ''off his check'' but did not remember the year.

Jungbauer, the bookkeeper, testified he did not remember whether or not he went to work for defendant on July 1st, 1938, but he did continue on at the plant after the season closed; that a few of the employees were on the payroll in Texas and came here to help out for a short period; that boxes were made for packing purposes but he could not say that was done before the season was opened; that he did not know how long the season lasted that year and would not ''venture a guess'' because he did not remember; that as bookkeeper he made up the report sent to the plaintiff in 1938, showing employment of four or more for 19 weeks only.

Clyde Lester then testified that he worked for defendant company in Texas and came here just before the season started but did not know the date; that the time cards kept by him showed that there were 19 weeks of employment in 1938, in which four or more were employed, i. e., for the packing season, from the time it started until it finished, and that it took into consideration the cleaning up before the packing started ''. . . from the time the deal started, the first man on the pay-roll until the deal was finished.'' He testified that plaintiff's auditor examined these cards and that the auditor told him that they showed 19 weeks and that he told the auditor ''It looks like a mistake in trying to hang it onto Frankenthal'' and that the auditor said ''That is right.''

The auditor then testified that he found, from an audit of the books, that Grass did not work before the season started but did work one week afterwards; that he found that F. Stillwell started work on July 1st, 1938, and worked ''intermittently'' until the season started; that E. Lester started on

the week ending July 16th and Clyde Lester went on the payroll on June 1st; that the time cards showed Jack Stillwell did not go to work before the beginning of the season; that Hovsepian started with the season; that Jungbauer was not even on the time cards until the season started.

Clyde Lester then testified that Grass was employed by a company making boxes for defendant just before the season opened; that he thought it was in 1938.

Floyd Stillwell testified he began working for defendant just a few days in advance of the fruit season in 1938, as he "recalled it."

One Kuckenbecker testified he worked for defendant and could not remember the exact year but according to his best recollection it was in 1938, and he "supposed" he worked in advance of the regular season but "it would be very hard" to estimate how long before, whether "one day or two days or how long it was."

Plaintiff, in its final audit, determined that there were four employees shown employed prior to the regular fruit season, to wit, one Frisch, Clyde Lester, one Stephens, and Floyd Stillwell. However, he testified his audit was based on the statements of the employees, plus the time cards, and that the time cards did not show that there were four or more people working there for a period in excess of 19 weeks.

Defendant then called Clyde Lester as his witness. He testified there was "very little" advance work done before the season opened, i. e., "a few days," and before the season was over they started cleaning up and it was practically all cleaned up except "a few days maybe." He previously testified that Stephens had been working in Texas and came to Sanger "after the deal started" and "left before the season was over"; that his name first appears on the payroll as of July 1st, as "buyer-manager Texas establishment"; that Frisch was a buyer in Texas and Sanger and that he could not say that he came ahead of the season because he "worked on the Texas deal also."

We have given more attention to and have set forth in detail more of the evidence than would ordinarily have been done, to show the uncertainty and confusion in the testimony as to the time when the employees were working and the number who worked during that season, to show the evidence from which plaintiff concluded that defendant came under the act, and to show the evidence the trial court considered in arriving at an opposite conclusion.

■ Even though the finding of plaintiff, as evidenced by its certificate under section 45.1, "shall be prima facie evidence of the payment by the employing unit of the amount of wages for employment by employers set forth therein," etc., it cannot be said that such prima facie evidence must be accepted, rather than the evidence opposed to it, or that the trial court may not consider the weakness or uncertainty of the evidence upon which such finding was made and such certificate was issued. ■ The trial judge has the inherent right to disregard the testimony of any witness or the effect of any prima facie showing based thereon, when he is satisfied that the witness is not telling the truth or his testimony is inherently improbable due to its inaccuracy or its uncertainty due to lapse of time or otherwise. All of these things may properly be considered in determining the weight that should be given to the statement of the witness or the certificate based thereon, although there be no adverse verbal testimony adduced. (*Bellus* v. *Peters,* 165 Cal. 112 [130 P. 1186]; *Brandt* v. *Brandt,* 85 Cal.App. 720 [260 P. 342]; *Simon Newman Co.* v. *Woods,* 85 Cal.App. 360 [259 P. 460]; *Rogers* v. *Burnham,* 140 Cal.App. 336 [35 P.2d 329]; *Tretheway* v. *Tretheway,* 16 Cal.2d 133 [104 P.2d 1033]; *Turman* v. *Ellison,* 37 Cal. App. 204 [174 P. 396]; *Estate of Stone,* 59 Cal.App.2d 263 [138 P.2d 710]; *Bartholomai* v. *Owl Drug Co.,* 42 Cal.App.2d 38 [108 P.2d 36]; 10 Cal.Jur. § 360, p. 1140; 10 Cal.Jur. §§ 362, 363, p. 1143 et seq.; Code Civ. Proc., § 1847.) ■ The trial judge was the arbiter of the credibility of the witnesses. An appellate court cannot control a finding or conclusion denying credence, unless it appears there are no matters or circumstances which at all impair the accuracy of the testimony. (*Davis* v. *Judson,* 159 Cal. 121 [113 P. 147]; *People* v. *Bartol,* 24 Cal.App. 659 [142 P. 510]; 10 Cal.Jur. § 364, p. 1146.)

■ The transactions involved in the instant action took place in July and August, 1938. A purported account was made by defendant from time cards kept by him. These time cards, as kept, fully support the trial court's finding. Based upon interviews with the employees made nearly two years thereafter, whose testimony does not now entirely support these signed statements which were prepared by plaintiff, plaintiff concluded that defendant came within the act. Rather than press that claim within a reasonable time, it waited until after a fire had destroyed many of defendant's records. In

March, 1942, nearly four years later, this action was filed and was not brought to trial until five years thereafter. Judgment was entered in November, 1947. Penalties and interest are claimed during all of this period, and two years' additional interest is now being claimed in case of a reversal of the judgment. Judging from the remarks of the trial judge he, no doubt, considered the entire claim on its merits. The issue involved the possible employment of one or two additional employees for a possible day or two before and after the packing season. He remarked in his oral decision: ''If Frankenthal does come under the act, he comes under it just by the skin of his teeth.'' It must be admitted that the testimony of the witnesses in support of plaintiff's claim is quite uncertain as to when the several employees worked. This was no fault of the employees because they, no doubt, gave their best recollection of the facts but due to the long delay, apparently occasioned by plaintiff, defendant was deprived of their early remembrance of the facts. It would be difficult for any fair-minded judge to thus penalize this defendant, on such a close question of fact, at this late date, based upon the uncertainty of the testimony produced. The trial court, from the evidence, was justified in finding that no more than three employees were employed the week before and the week following the fruit-packing season.

In its reply brief plaintiff, for the first time, questions the right of defendant to defend this action (citing *Modern Barber Colleges, Inc.* v. *California Employment Stab. Com.*, 31 Cal.2d 720 [192 P.2d 916].) That was a mandamus proceeding which was in effect to compel the commission to cancel charges of contributions levied against the petitioner. The case cited merely held that mandamus would not lie to prevent collection of such a tax under Act 8780d, section 45.11(d), *supra,* and in connection therewith stated that ''the remedy of suit to recover taxes paid has expressly been made the *exclusive* means of obtaining a judicial review of the legality of the assessment.'' (Italics ours.) Since this question was not presented or raised until the filing of the closing brief, we will not consider it. (2 Cal.Jur. § 424, p. 734.) However, it should be noted that the act provides for cumulative methods of collecting and enforcing collection of contributions, interest and penalties imposed under the act. (See §§ 45.8, 45.9 and 45.11.) Section 45 definitely provides that ''If an employer fails to make any payment required of him . . . Such employer and worker contributions, interest and the penalties

. . . shall be collectible by civil action in the name of and by the commission against the defaulting employer, in addition to any other procedures prescribed by this act." While the action filed by plaintiff may be cumulative, it is one definitely provided for by the act for the collection of the amount claimed due. Plaintiff chose to thus proceed and surely defendant would have the inherent right to defend the action. The Supreme Court has entertained appeals from judgments in actions instituted by the commission for the collection of such contributions. (*California Emp. Com.* v. *Kovacevich,* 27 Cal.2d 546 [165 P.2d 917] ; *California Employment Stabilization Com.* v. *Norins Realty Co.,* 29 Cal.2d 419 [175 P.2d 217] ; *California Employment Stabilization Com.* v. *Morris,* 28 Cal.2d 812 [172 P.2d 497].) Appeal from order dismissed. (2 Cal.Jur. § 34, p. 173.) Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.