[Civ. No. 24761.   Second Dist., Div. One.   Aug. 14, 1961.]

M. A. RIDDLE, Appellant, v. LOUIS FIANO et al.,
Respondents.

Saul C. Nadel and Bruce Hochman for Appellant.

Louis Fiano et al., in pro. per., for Respondents.

FOURT, J.—This is an appeal from a judgment after a trial by the court, in favor of the nonappearing defendants. Plaintiff filed his action on September 15, 1959, in six counts.

The first count sets forth in effect that plaintiff was a resident of Los Angeles County and Clark County (Las Vegas), Nevada; that Fiano was a resident of Los Angeles at the time of the episodes in question and is now a federal prisoner in Leavenworth Prison; that Ruth Conte, a sister of Fiano, resides in Kings County, New York, and that within four years an account was stated and $15,000 was agreed upon as a balance due and Fiano orally agreed to pay such sum.

The second count realleges the first five paragraphs of the first cause of action and that there was an open book account between Riddle and Fiano in the sum of $15,000 for money advanced and entrusted to Fiano at his request for safekeeping. There was attached to and made a part of the second count an exhibit hereinafter referred to wherein Fiano supposedly admitted receiving $15,000 from Riddle.

The third cause of action realleges the first five paragraphs of the first cause of action and further sets forth, among other things, that plaintiff arrived in Los Angeles from Las Vegas on May 13, 1958, at which time he had $15,000 in cash upon him composed of some five hundred dollars ($500) in bills, and the remainder in one hundred dollar ($100) bills. The money was the property of the plaintiff; plaintiff had an appointment with Fiano and Steve Crane with reference to a restaurant transaction; the venture with reference to the restaurant did not materialize and they had dinner. Liquor was

consumed and for safekeeping plaintiff transferred the money to Fiano who was to return it the next day; the transfer was witnessed by Evelyn Gould, Jo Ann Bunker, Jeanne Haddad, Charles Soffer and L. A. Lakin.

At a late hour plaintiff and Lakin returned to a hotel and Fiano invited the others to his place of abode. The next morning plaintiff received a call that Fiano had been arrested for narcotic offenses by federal narcotic officers; plaintiff and Lou Friedman went to Fiano's and in the presence of federal agents counted the money found at Fiano's and also made claim thereto; the Director of Internal Revenue received $15,000 from the federal agents and applied the same to a tax deficiency owed by Fiano; the Internal Revenue Director has refused to relinquish the money and plaintiff instituted an action in the federal court against the Director of Internal Revenue. After trial the complaint was dismissed upon the grounds that plaintiff failed to establish the fact that the monies found in Fiano's possession were the same monies delivered to him.

The fourth count realleges the first five paragraphs of the first cause of action and paragraphs two to 11 inclusive of the third cause of action and further charges an implied contract for the defendant Fiano to return the money.

The fifth count realleges the matters as realleged in the fourth cause of action and further sets forth that Fiano would be unjustly enriched if permitted to keep the money and that a constructive trust should be imposed.

The sixth count realleges all of the matters which were realleged in the fifth cause of action and further asserts that Fiano and Conte resided outside of California and the real property in question was located in Los Angeles County; on July 17, 1958, Fiano was convicted of narcotic offenses; prior to July 17, 1958, Fiano was the record owner of the real property particularly described; in anticipation of the sentence and to hinder the United States Government and plaintiff and to make himself judgment proof, Fiano conveyed the real property to Ruth Conte without consideration and as his agent to hold title to the real property. On July 28, 1958, Fiano was sentenced to 20 years and a $20,000 fine and the government has a lien for the fine and further that in plaintiff's action against the government the federal court found for the government upon the ground that plaintiff failed to establish the fact that the monies found in Fiano's possession were the same monies delivered to him; the conveyance to

Ruth Conte hinders the government in the sale of the property which is worth $35,000.

Exhibit "A" was attached to the second count, which exhibit purports to be a written statement made out May 15, 1958, by Fiano on the stationery of the present attorney for the plaintiff and notarized by said attorney. Fiano set forth therein that at the time of his arrest he had $15,000 in his possession which belonged to the plaintiff; that such sum was given to him by plaintiff for safekeeping because plaintiff was drinking liquor; that Fiano requested the authorities to turn the money over to the rightful owner.

The plaintiff secured an order for publication of the summons. In the "Certificate/Declaration for Publication of Summons," it is set forth:

"Defendant, Ruth Conte, sister of defendant, Louis Fiano, resides outside the State of California, and more particularly at 2324 Mermaid Avenue, Kings County, Brooklyn, New York. This information as to her address was obtained from the files of the U.S. District Court, Southern District of California, Central Division, Case No. 26818, wherein the said defendant, was sued to quiet title in 1958, appeared and answered the complaint on file. This cause of action is similar to the one sued upon therein and relates to the same property." It is interesting to note that the case Number 26818 referred to was in fact the criminal case prosecuted by the government against Fiano for the heroin transaction and nothing therein contained refers to Ruth Conte, the sister of Fiano, or her address.

Apparently personal service in lieu of or as the equivalent of the publication of the summons was made and the defaults of defendants were entered on November 2, 1959, by order of the court.

A hearing was conducted before the trial judge on November 18, 1959, at which time plaintiff presented himself, Jeanne Haddad and his own attorney as his witnesses. At the conclusion of the hearing the court advised the plaintiff that he would continue the hearing to December 16, 1959, at which time the plaintiff could offer any further evidence he desired to offer. Apparently the invitation to present further evidence was not accepted. The judge thereafter took the matter under advisement and on February 2, 1960, caused a judgment to be entered in favor of the defendants.

A résumé of the testimony is as follows:

The plaintiff testified that he was the president of the corporation which operates the Dunes Hotel in Las Vegas,

He stated that he had known Fiano for several months prior to the evening in question. The witness said it was his custom to carry large sums of money on his person and that he had $15,000 with him when he entered Lucey's restaurant on the evening of May 13, 1958, with Fiano and others. He further stated that upon leaving Lucey's they all went to a night club on La Cienega Boulevard in Beverly Hills. He said that at the night club Fiano, who knew plaintiff had the money with him, suggested, "that I let him keep the money, because he was going home and I was going out for the evening and I had been drinking. And he would return it to me the following morning." The money was turned over to Fiano in the presence of the others present. Soffer, Lakin, the witness (Riddle) and "a lady friend" proceeded to a hotel. The next morning a call was received from Fiano asking him to come out to his home for breakfast. About 11 or 12 a. m. on May 14th apparently another call was received from Fiano to the same effect. However, Fiano agreed during the conversation to come to the plaintiff's hotel room. While waiting for Fiano a telephone call was received from Miss Haddad who stated, "You had better come out and get your money. The narcotics people have Lou under arrest and you had better come out and claim your money." The witness went to Fiano's and there he saw the narcotics agents and he made a demand for the money and was refused. Fiano was in financial distress.

Miss Haddad testified that she had known Fiano for three years and Ruth Conte for about one and one-half years. She said she was at Lucey's restaurant with the group and went to the night club on the night in question. She further stated, "while we were at Slate Brothers (the night club), I was sitting by Mr. Riddle, and Mr. Fiano and I saw Mr. Riddle hand Mr. Fiano the money." She was not present the next day when Riddle appeared at Fiano's and made a demand for the money but she, at that time, was in her own apartment in the same building. Fiano was having financial problems and she did not know whether he owned other property. She had met Ruth Conte in Los Angeles and had seen her in Brooklyn, New York, where Ruth Conte lived. The establishment where Ruth Conte lived was not a pretentious one; that she had made gifts to Ruth Conte who suffered from Hodgkin's disease and that Ruth's husband was a vegetable clerk.

Upon presenting the above-stated evidence the plaintiff rested his case. The judge gave some indication that he would not be disposed to grant a judgment for the plaintiff under

the circumstances. The plaintiff then offered into evidence the *lis pendens* which was on file and Exhibit "A" which was the written statement of Fiano. The attorney also took the witness stand and testified that on May 15, 1958, he had gone to the county jail and met Fiano at which time Fiano had stated that "he had moneys delivered by Mr. Riddle and that they had been seized by the government." Based upon Fiano's statement, the affidavit (Exhibit[1] "A") was prepared and he (Nadel) had then notarized it. The deed from Fiano to Conte was also offered into evidence.

When asked by the judge about his theory of a recovery, counsel indicated that the sister (Conte) apparently did not have the means to pay any money to Fiano and that, therefore, Fiano must not have received any consideration for the property.

Counsel cited the case of *Malaquias* v. *Novo,* 59 Cal.App.2d 225, 231 [138 P.2d 729] as authority for his position. A reading of that case readily demonstrates that counsel misstated the matter to the court.

There then followed a colloquy between counsel and the judge as to the various facets of the case consisting of, among others, the problem of res judicata.

The cause was then continued to December 16th to give the plaintiff an added opportunity to submit further evidence.

---

[1]"EXHIBIT 'A'

"STATE OF CALIFORNIA    } ss.
"COUNTY OF LOS ANGELES }

"LOUIS FIANO, first being duly sworn, deposes and says that:

"At the time of affiant's arrest in May, 1958, he had in his possession certain monies of which fifteen thousand dollars ($15,000.00) belonged to Mr. M. A. RIDDLE. This sum of money was given to deponent by Mr. Riddle for safe keeping because the said Mr. Riddle was partaking of alcoholic beverages during the evening of May 13, 1958. These monies were given to me in the presence of several witnesses.

"By this document, I hereby request and demand the Sheriff of Los Angeles County and/or the appropriate officials of the United States Government to turn over said monies to their rightful owner. If for any reason these monies may not be available for release, I thereby and herein request that they be turned over to the said Mr. M. A. Riddle when they become available.

"/s/   LOUIS FIANO
"          LOUIS FIANO

"SIGNED, SORWN (*sic*) TO AND SUBSCRIBED
"BEFORE ME THIS 15TH DAY OF MAY, 1958

---

"NOTARY PUBLIC IN AND FOR SAID
"COUNTY AND STATE
"MY COMMISSION EXPIRES AUGUST 12, 1958."

The plaintiff offered into evidence a certified copy of the findings and the judgment in the United States District Court proceeding, to which reference was made in the complaint.

The memorandum filed by the trial judge on February 2, 1960, sets forth among other things, as follows: "There is a conflict in the evidence which must necessarily be resolved in favor of defendant Fiano, notwithstanding his default." It was also set forth therein that the federal judge had "found that immediately after Fiano's arrest on May 14, 1958, 'his apartment and car were searched in his presence by the arresting agents and the total sum of $17,844.71 in cash was found in his car and in two places in his apartment. $7,000 of the cash was in $500 bills; the balance was of smaller denominations.' " The memorandum continued with a statement with reference to the findings in the federal court as follows: " 'The $7,000 in $500 bills among the $17,844.71 in money found in Fiano's possession when he was arrested on May 14, 1958, was part of $10,000 in $500 bills Fiano had obtained from the Wilshire-LaCienega Branch of the City National Bank of Beverly Hills on Friday, May 9, 1958, by exchanging therefor smaller bills, and was property of Fiano and not the money or property of plaintiff.' " The memorandum also indicated that the plaintiff caused to be introduced into evidence a transcript of part of the remarks of the federal judge at the time of the federal court trial; such remarks being in part as follows: " 'Both counsel,' said Judge Westover, 'seem to overlook a point which in my opinion is the controlling factor in this case, one of the facts which I think leads the court to come to the conclusion which it has come to. You remember when Mr. Riddle was on the stand I asked him in detail as to how the money was carried, whether it was placed in an envelope or whether it was rolled up. He testified that the bills were laid out, stretched out, and then rubber bands were placed around them so as to make up a package of the bills. He testified, also, that in the night club he turned this package over to Fiano. One of the other witnesses also testified, I believe, that a package was turned over. When the officers went into the apartment the next morning, if they had found a package of money of $15,000 surrounded with rubber bands, I would have been inclined to hold that the money belonged to Mr. Riddle. But that was not the testimony. The testimony was that there was about $15,000 in loose money. Part of it was in the bedroom, part of it was in the dining room, just placed in the drawer, just

loose, and there was no indication that that was the same package as the package which was delivered to Mr. Fiano by Mr. Riddle. There was no indication that this was the same package. Consequently, I am of the opinion that the plaintiff has not sustained the burden of proof of establishing that this was the same money. If Mr. Fiano had kept the money segregated in an envelope, if the money had been in the package which was given to him, then I would be constrained to hold in favor of the plaintiff. But inasmuch as the money was not kept in that way, it was loose in the drawer of the bedroom and in the dining room, I can't find any evidence to support a finding that this was the money that Mr. Riddle gave to Fiano, or thought he gave to Fiano.' ''

The trial judge in the case before us further wrote: ''On the evidence produced by plaintiff here I find that plaintiff has failed to establish his burden of proving that he gave $15,000 to Louis Fiano for safe keeping and has failed to establish his burden of proof that Fiano is indebted to him in that or any other sum.''

The United States Government was not a party to this action and the plaintiff, so far as it appears, was not authorized to appear for the government. The trial court concluded its memorandum by stating: ''Since plaintiff has not met the burden of establishing his position as a creditor of Fiano, he has not established his alleged right to attack the validity of the deed from Fiano to Conte.''

The appellant now contends that the doctrine of res judicata is not applicable to the situation presented in this case, that in any event the doctrine should have been pleaded, that having defaulted the respondents admitted all of the allegations of the complaint and that a judgment against Fiano should have been entered as a mere ministerial act.

The respondents have submitted to this court a document which purports to be a brief, but which in truth and in fact is only an instrument which attempts to state certain matters which this court has not considered. Fiano sets forth in his so-called brief that Nadel, Riddle's attorney, came to the county jail to see him and at such time stated to him in effect that he, the attorney, had talked to Riddle about the arrest of the plaintiff and had decided that if a deal could be made to obtain $15,000 of the confiscated money then they would divide it three ways, between Nadel (the attorney), Fiano (the defendant in the case), and Riddle (the plaintiff here). Fiano states that he thereupon signed the affidavit which was

Exhibit "A" of count two only to keep the government from getting the money. Furthermore, Fiano states that now all taxes and fines have been paid by him to the government, that there can be no repercussions and that in fact Fiano got the money which he had in his possession at the time of the arrest at the bank five days previous to the arrest. Nadel, by a closing or answering statement, in effect has denied that such was the course which was followed.

Appellant seems now to be of the belief that the trial judge, under the circumstances, was required to believe him and his witnesses, in that there was no contradictory evidence introduced by the defendants. Such is not the law. There were many discrepancies in the testimony in the plaintiff's case. For example, the testimony by plaintiff is to the effect that he handed to Fiano $500 in bills and $14,500 in $100 bills, making a total of $15,000. In other words, he states that he handed to Fiano 145 $100 bills (a package at least as thick as a 145-page book). Yet, when the federal agents searched Fiano and his property (car and house) the agents came up with $7,000 in $500 bills and the balance of the total of $17,844.71 in bills of other denominations. Furthermore, the federal judge found that the $7,000 in $500 bills was part of $10,000 in $500 bills which Fiano had obtained from a bank on May 9, 1958, and was the property of Fiano and not of the plaintiff herein.

The judge had the opportunity to see the witnesses testify. He obviously did not believe them. The credibility of a witness is for the trial court to determine and particularly so where a witness, as the plaintiff here, is directly interested in the results of the case. (Code Civ. Proc., §§ 1847, 2061. See note in 62 A.L.R.2d 1191 "Credibility of witness giving uncontradicted testimony as matter for court or jury.")

In *Davis* v. *Judson*, 159 Cal. 121, 128 [113 P. 147] it was said:

"While it is the general rule that the uncontradicted testimony of a witness to a particular fact may not be disregarded, but should be accepted by the court as proof of the fact, this rule has its exceptions. The most positive testimony of a witness may be contradicted by inherent improbabilities as to its accuracy contained in the witness's own statement of the transaction; or there may be circumstances in evidence in connection with the matter, which satisfy the court of its falsity; the manner of the witness in testifying may impress the court with a doubt as to the accuracy of his statement and

influence it to disregard his positive testimony as to a particular fact; and as it is within the province of the trial court to determine what credit and weight shall be given to the testimony of any witness, this court cannot control its finding or conclusion denying the testimony credence, unless it appears that there are no matters or circumstances which at all impair its accuracy.''

In *La Jolla Casa de Manana* v. *Hopkins,* 98 Cal.App.2d 339 at p. 346 [219 P.2d 871] it is said:

''. . . The trial judge is the arbiter of the credibility of the witnesses. A witness may be contradicted by the facts he states as completely as by direct adverse testimony, and there may be so many omissions in his account of particular transactions or of his own conduct as to discredit his whole story. His manner of testifying may give rise to doubts of his sincerity and create the impression that he is giving a wrong coloring to material facts. (*People* v. *Frankenthal,* 91 Cal. App.2d 189 [204 P.2d 614, 617]; *Burns* v. *Radoicich,* 77 Cal. App.2d 697 [176 P.2d 77].) Where conflicting inferences may be drawn from testimony, this court is bound by the findings of the trial court as conclusively as in other cases of conflict. (*Garcia & Maggini Co.* v. *Sanfilippo,* 56 Cal.App. 348 [205 P. 74].)'' (See also *Oldenburg* v. *Sears, Roebuck & Co.,* 152 Cal.App.2d 733, 743 [314 P.2d 33]; *Tidlund* v. *Seven Up Bottling Co.,* 154 Cal.App.2d 663, 666 [316 P.2d 656].)

The trial judge had the opportunity to observe the plaintiff and Miss Haddad testify, he heard their tones of voice, he saw their hesitations and general demeanor, he saw their bearing and delivery, the various expressions on their faces and their gestures. One court has stated it as follows:

''. . . one witness may give testimony that reads in print, here, as if falling from the lips of an angel of light, and yet not a soul who heard it, nisi, believed a word of it; and another witness may testify so that it reads brokenly and obscurely in print, and yet there was that about the witness that carried conviction of truth to every soul who heard him testify. . . .'' (*Creamer* v. *Bivert,* 214 Mo. 473 [113 S.W. 1118, 1120].)

It was also stated in *Broadcast Music* v. *Havana Madrid Restaurant Corp.,* 175 F.2d 77, 80:

''. . . For the demeanor of an orally-testifying witness is 'always assumed to be in evidence.' It is 'wordless language.' The liar's story may seem uncontradicted to one who merely

reads it, yet it may be 'contradicted' in the trial court by his manner, his intonations, his grimaces, his gestures, and the like—all matters which 'cold print does not preserve' and which constitute 'lost evidence' so far as an upper court is concerned. For such a court, it has been said, even if it were called a 'rehearing court,' is not a 'reseeing court.' Only were we to have 'talking movies' of trials could it be otherwise. A 'stenographic transcript correct in every detail fails to reproduce tones of voice and hesitations of speech that often make a sentence mean the reverse of what the words signify. The best and most accurate record is like a dehydrated peach; it has neither the substance nor the flavor of the fruit before it was dried.' It resembles a pressed flower. The witness' demeanor, not apparent in the record, may alone have 'impeached' him. . . .''

The plaintiff here was obviously biased in his own favor and it appeared rather certain too that Miss Haddad could have had a more than passing interest in the whole business under the circumstances.

The position of this court is inferior to that of the trial judge with reference to the matter of judging credibility of the witnesses and very properly so.

At the time of the oral argument before this court, counsel for the plaintiff said:

''It's inconceivable, at least it would be to me, . . . that a man would be walking around with this kind of money in his pocket. But taking the entire matter, or the entire picture, as it exists—a man who owns a hotel in Las Vegas, customarily dealing with large sums of money, this is not an unusual factor. Under ordinary circumstances I myself would doubt the credence of a man that said he walked around with $15,000.00 in his pocket.''

If the testimony and the whole alleged transaction sounded inconceivable to him and under ordinary circumstances he himself would have doubted the credence of a person so testifying, how much more so did it appear to the judge who was there for the sole purpose of determining the credibility of the witness and to render a true and correct judgment with no bias or prejudice whatever and with no fee to collect or client to represent.

■ As to the assertion of the appellant that the doctrine of res judicata does not apply in this case, it is true that the defendants in this action were not parties to the action in the federal court. Such a situation would not necessarily,

however, prevent the doctrine from applying. (See *Bernhard* v. *Bank of America*, 19 Cal.2d 807 [122 P.2d 892]; *Loughran* v. *Reynolds*, 70 Cal.App.2d 241 [160 P.2d 904]; *Alexander* v. *Hammarberg*, 103 Cal.App.2d 872 [230 P.2d 399].)

There was without question a final judgment in the federal court. A question here would seem then to be whether the issue decided in the federal adjudication was substantially the same as the issue presented in this case.

It is true that in the federal court proceedings Riddle (plaintiff here and the plaintiff there in one case) attempted to have it determined that he (Riddle) had handed to Fiano $15,000 in cash, made up of certain denominated bills. The federal judge determined that the $17,844.71 found by the federal officers at Fiano's was not made up in part from any $15,000 allegedly turned over to Fiano by Riddle. It would appear, therefore, that the federal court did determine certain facts which could be conclusive upon the parties here. (*Whittier* v. *Visscher*, 189 Cal. 450 [209 P. 23]; *Estate of Clark*, 190 Cal. 354 [212 P. 622]; *Zaragosa* v. *Craven*, 33 Cal. 2d 315 [202 P.2d 73, 6 A.L.R.2d 461]; *Wynn* v. *Treasure Co.*, 146 Cal.App.2d 69 [303 P.2d 1067]; *Kaiser* v. *Mansfield*, 141 Cal.App.2d 428 [297 P.2d 98]; *Stout* v. *Pearson*, 180 Cal.App. 2d 211 [4 Cal.Rptr. 313]; *Pacific Gas & Elec. Co.* v. *Shasta Dam Util. Dist.*, 146 Cal.App.2d 752 [304 P.2d 862]; *City of Los Angeles* v. *Jameson*, 165 Cal.App.2d 351 [331 P.2d 1014].)

It must be kept in mind that the plaintiff here alleged that he brought an action in the federal court against Riddell, the Director of Internal Revenue, and that he (the plaintiff) had failed to establish the fact that the monies found in Fiano's possession were the same monies he (the plaintiff) had delivered to him. And further he alleged that ''The Court, after trial, found for the defendant on the grounds that plaintiff failed to establish the fact that the monies found in Louis Fiano's possession were the same monies delivered to him.''

The federal court judgment clearly set forth that the money which was transferred from Riddle to Fiano, if any, was not the money found at Fiano's by the officers.

A final judgment is conclusive as to the relief granted and also as to the relief denied or withheld.

Appellant complains that respondents did not plead the former adjudication by way of answer. Such is true, but the plaintiff himself twice affirmatively set forth the former judgment and action and placed the matter squarely before

the trial court in his pleadings and in his arguments to the court.

Here the plaintiff undoubtedly was convinced that his action did not fall within the provisions of the statute where the clerk could enter the judgment for he took the necessary steps to have the judge hear the matter instead of having the clerk enter up the judgment as a ministerial act. He specifically asked the court to render judgment in his favor based upon the testimony he produced which the judge did not do. Having taken the course he did it ill behooves the plaintiff now to say that he should not have submitted the matter to the judge for hearing and that the judgment should be reversed because the clerk might have entered the judgment had the clerk been so requested.

It is apparent among other things that the judge disbelieved the plaintiff and his witnesses and therefore held that the plaintiff had not carried the burden of proof. We have carefully read the entire record in this case and we believe that the trial judge was correct in deciding the matter in favor of the defendants.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.