136

WALTER E. FRYE et al., Plaintiffs, Cross-defendants and Respondents, v. HARRY FELDER, Defendant, Cross-complainant and Appellant.

Marvin G. Poverny for Defendant, Cross-complainant and Appellant.

Lauren M. Handley for Plaintiffs, Cross-defendants and Respondents.

KAUS, J.—Defendant Felder appeals from a summary judgment in favor of plaintiffs Walter E. and Phylliss A. Frye. The issue posed by the appeal is whether a trial court should grant a motion for summary judgment on the basis of facts alleged in plaintiff's uncontradicted declaration, which facts the defendant is in no position to deny, but where the plaintiff's own declaration raises a grave question concerning his credibility.

The trial court granted plaintiffs' motion on the basis of Walter E. Frye's declaration and that of the defendant. Since plaintiff and defendant apparently never met and their declarations concern themselves largely with different transactions which each had with one Spelger, it is perhaps not surprising that there is no conflict between the declarations.

As Felder's dealings with Spelger precede plaintiffs' in point of time, we summarize his declaration first: In August 1962, he entered into a joint venture with Spelger who was running a boat yard in Venice, California. The purpose of the joint venture was to purchase four boats, to outfit and then to sell them. Felder borrowed over $11,000, which he turned over to Spelger, who used about $7,000 for the purchase of the boats. The bills of sale showed title in the name of Felder. The boats were not registered. Improvement on the boats started in October 1962 under the supervision of Spelger. Neither at that time nor at the time Felder's declaration was filed were the boats capable of being used as a means of transportation on water. Felder never assigned his interest in the boats to any other person, nor did he ever permit anyone to cause the boats to be registered under the pertinent portions of the Harbors and Navigation Code. (Harb. & Nav. Code, § 680 et seq.)

We then take up the story with Frye's declaration: Spelger had been introduced to him in 1961. Spelger told Frye that he wanted to borrow money from a private lender and that he had heard that Frye "sometimes made loans." Frye observed Spelger's boat yard operations. Sometime in the fall of 1961, Frye made a loan to Spelger which was promptly repaid. In February 1963, Spelger wanted to borrow $13,000 for the purpose of refitting the boats which were the subject matter of the joint venture. As security for the loan Spelger delivered to Frye the certificates of ownership on three of the boats, which he had caused to be registered. These certificates showed Frye as legal owner.

Spelger gave Frye a demand note in the sum of $13,000 but "... although the promissory note executed by said defendants Spelger in favor of Declarant and his wife, Phyllis A. Frye, was for the face amount of $13,000.00, actually only $9,500.00 was actually [sic] borrowed, since said Spelgers offered to repay and Declarant accepted $3,500 as an immediate repayment, and credited Spelgers account accordingly." The note bore interest at 10 percent. The debt was not repaid.

Nowhere in Frye's declaration does he admit to or disclaim any knowledge of Felder or Felder's alleged interest in the

boats, but it is perhaps significant that Felder was not originally named a defendant to Frye's action, the purpose of which is to obtain possession of the three boats covered by the certificates of ownership and to "quiet title" thereto, so that Frye may foreclose on them.

Felder's declaration denies actual authority to borrow the money for the joint venture and states that it was never used for the purpose represented to Frye.

Concurrently with his motion for a summary judgment Frye filed an affidavit for the purpose of obtaining an order for publication of summons against Spelger, which indicated that Spelger had left the jurisdiction. (Later Spelger was served by publication and his default entered.)

We assume without deciding that Frye was an equitable pledgee of the boats and that Felder may be in no position to assert his alleged title against Frye. Although our research discloses some doubts on those points, any discussion may be entirely academic after all the evidence is presented in a full trial.

No one can read Frye's description of the transaction without some amazement. Why would a person borrow $13,000, give a note in that amount and immediately repay $3,500? There may, of course, be some perfectly innocent explanation for this, but one immediately suspects a good possibility that no more than $9,500 ever changed hands and that Frye entered into a usurious transaction. (*Anderson* v. *Lee*, 103 Cal.App.2d 24 [228 P.2d 613].) If that were so, however commendable may be his desire to foreclose on his security for no more than the actual amount loaned, plus 10 percent interest, his attempt to camouflage his former cupidity raises a serious issue as to his credibility.[1]

The loan from Frye to Spelger is the kingpin of his case. It is a transaction to which no one available could testify, except Frye himself. He has not buttressed his bare declaration that Spelger borrowed $9,500—or $13,000 minus $3,500—with canceled checks or such other corroborative evidence as one would expect to be available to him. We note that his complaint—verified by his attorney—alleges that the loan was made in cash, but there is no such allegation in his declaration.

The problem of summary judgments based on uncorroborated declarations of interested parties, particularly where

---

[1] It is quite immaterial to our opinion whether any initial attempt at usury can conceivably be a defense. We are only discussing Frye's credibility.

those opposing the motion are in no position to contradict the moving parties' showing, is discussed by Professor Bauman in his article, *California Summary Judgment: A Search For A Standard,* 10 U.C.L.A. Law Review, page 347. It is that author's submission that as a practical matter our appellate courts do not favor summary judgments in such situations, but that instead of basing reversals on the true ground, namely the question of the credibility of the declarant, they prefer to look for technical defects in his declarations. Reversals are based on holdings that the declarations are not ''evidentiary'' but contain ''ultimate facts'' or conclusions. Professor Bauman proposes a reexamination of the articulated standards, so that ''the evidence presented in support of the motion must be judged not only as to its sufficiency to substantiate a claim or defense, but also as to its credibility.'' (*Ibid.,* p. 367.) In his view, the mere fact that the declaration comes from an interested party creates a credibility issue.

The case which Professor Bauman particularly criticizes is *Coyne* v. *Krempels,* 36 Cal.2d 257 [223 P.2d 244], where the Supreme Court affirmed a summary judgment based on uncontradicted affidavits, one by the plaintiff, the other by an employee of his attorney. Defendant filed no counteraffidavits. Bauman feels that although the plaintiff's affidavits may have been technically perfect, the mere fact that he was a party raised a question of sincerity. It must be noted, however, that in *Coyne* facts sufficient to defeat the summary judgment were within the knowledge of defendant who could have filed a counteraffidavit, had plaintiff's allegations been false.

Thus *Coyne* does not necessarily stand for the proposition that a motion for summary judgment must be granted in favor of a party with the burden of proof, if his moving papers are technically perfect, although the other side is in no position to contradict the proof.[2] Yet even if such were the case, the moving papers in *Coyne* did not, as do Frye's, raise a serious question of credibility on their face. Without an explanation for the immediate repayment of the sum of $3,500, any

---

[2] To some extent the difficulties of the party who resists a motion for summary judgment based on declarations which he cannot contradict but the veracity of which are open to question can be ameliorated by taking the declarant's deposition. (*Kramer* v. *Barnes,* 212 Cal.App.2d 440, 444 [27 Cal.Rptr. 895].) Still, this robs the resisting party of one weapon in the arsenal of any litigant faced with uncontradicted testimony—the possibility that the trier of facts will disbelieve a witness solely because of his demeanor on the stand. (*Riddle* v. *Fiano,* 194 Cal.App.2d 684, 693 [15 Cal.Rptr. 248].)

trier of fact would be justified in rejecting that part of Frye's story and, having done so, could disbelieve his entire testimony. (Code Civ. Proc., §§ 1847, 2061, subd. (3) ; *Lohman* v. *Lohman*, 29 Cal.2d 144, 149 [173 P.2d 657] ; *Ganahl* v. *Certain Individuals*, 204 Cal.App.2d 571, 581 [22 Cal.Rptr. 520].) If, as seems possible, he is willing to be less than candid on one aspect of his transaction with Spelger, even though that aspect may be legally insignificant to the issues of the litigation, he may be equally insincere in his protestations of good faith concerning Spelger's power to convey a security interest in the boats. The Supreme Court has told us repeatedly that the summary judgment procedure "is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts." (*Stationers Corp.* v. *Dunn & Bradstreet, Inc.*, 62 Cal.2d 412, 417 [42 Cal. Rptr. 449, 398 P.2d 785].) We think that before Frye recovers in this action, his testimony should be subjected to cross-examination before a trier of facts who can base the determination of the merits of his case not only on what he says, but also on how he says it. (*Davis* v. *Judson*, 159 Cal. 121, 128 [113 P. 147] ; *Riddle* v. *Fiano*, 194 Cal.App.2d 684, 692-694 [15 Cal. Rptr. 248].)

The judgment is reversed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied November 22, 1966, and respondents' petition for a hearing by the Supreme Court was denied December 28, 1966.