[Civ. No. 12010. Third Dist. Aug. 1, 1969.]

\*CARRIE JO HARDING et al., Plaintiffs and Appellants, v. RONALD BENTON PURTLE et al., Defendants and Respondents.

*Reporter's Note: This case was previously entitled "Harding v. Mac Dougal."

Peter Heintz for Plaintiffs and Appellants.

Rust, Hoffman & Mills, Michael C. Gessford and Stephen R. Kauffman for Defendants and Respondents.

PIERCE, P. J.—In a three-car "rear end" automobile collision personal injury action defendants Purtle (the driver) and Elder (owner) of the middle car were granted a summary judgment. Plaintiff Carrie Jo Harding whose car in front was hit appeals. The basis of the trial court's order was "that the plaintiffs have not produced any evidence to show that the conduct of Ron B. Purtle was either negligent or a proximate cause of the injuries suffered by the plaintiffs." ■ But a summary judgment will not be granted if there is a triable issue of fact. ■ Before the party against whom the judg-

ment is granted has to show anything *the moving party* must show "facts establishing every element necessary to sustain a judgment in his favor [and] such facts must be set forth with particularity. . . ." (*Kramer* v. *Barnes* (1963) 212 Cal.App. 2d 440, 446 [27 Cal.Rptr. 895].) ▉▉ Because defendants did not sustain that burden here judgment must be reversed.

Before the trial court when the motion was granted were the depositions of Mrs. Harding and Purtle.[1]

The accident happened on Arcade Boulevard in the north area of Sacramento, near the intersection of that street and Kenwood Avenue. It occurred during the noon hour of Wednesday, May 4, 1966. Mrs. Harding, a young housewife, was driving and with her in her car were her three daughters, the eldest of whom was eight and a half, and a neighbor, Joyce Doucette. At the point where the accident happened Arcade Boulevard is a two-lane street. Apparently a number of automobiles were traveling ahead of the Harding vehicle. Traffic was moving slowly—between 15 and 20 miles per hour. That was also Mrs. Harding's speed just before and for some distance back from the point where she ultimately stopped under circumstances to be described. As she drove she frequently checked by means of her rear view mirror, but noted neither the Purtle automobile behind her nor the Mac Dougal vehicle—which, with its admittedly defective brakes, set in action the chain of events ending in the ultimate accident.

As Mrs. Harding approached the point where Kenwood Avenue emerges into Arcade Boulevard, the car ahead of her slowed to a stop to allow other cars through. At the slow speed Mrs. Harding was traveling no emergency stop was required. Little, if any, pressure on the brakes was necessary. She stopped—it could be inferred—almost a car length behind the automobile which had stopped ahead of her.

It was then she first noticed the Purtle car. She observed to her friend Joyce: "I hate a car that gets up on me," and then "Boy, that guy's going to run over me." It would be inferable from Mrs. Harding's testimony that only inches separated the front of Purtle's car from the rear end of hers when Purtle finally reached a stop. (Mac Dougal's deposition puts the distance at a foot or two.) It *did* reach a stop and several seconds elapsed before the ensuing crash. There is nothing in the record as to Purtle's speed.

---

[1]The deposition of defendant David Lee Mac Dougal also had been ordered produced. The minute order for summary judgment indicates it did not figure in the decision.

Purtle's deposition sharply conflicts with Mrs. Harding's as to the distance separating the two cars when Purtle came to a stop. He stated he was from 5 to 10 feet to the rear of the rear end of her car. In summary judgment proceedings we do not resolve triable issues of fact; we determine whether they exist. Actually, however, in determining the reasonable possibility of a breach of a duty of care plus proximate cause, it does not make any difference which version is accepted. Purtle was driving a 1958 standard shift Chevrolet. He testified he had his right foot on the brake depressing it. The car was in low gear and his left foot was depressing the clutch. At the impact of the Mac Dougal car with his car, he believed his foot came off the clutch. We do not know whether this was intentional or unintentional. From Mrs. Harding's testimony inferences could be drawn that Purtle was driving at a speed excessive under the existing traffic conditions; also that he stopped suddenly. He admitted he had no knowledge of the approach of the Mac Dougal car and therefore gave it no signal of warning. The Mac Dougal deposition permits an inference that his speed was not great. From testimony as to the comparatively slight damage to the rear end of the Purtle car ("a slight dent below the . . . trunk, and a slight dent in the taillight, and cracked lens") there is a triable issue of fact that the force and damage of the impact between the Purtle and Mac Dougal cars was slight and the lunge when Purtle's foot was removed from the clutch and his car struck Mrs. Harding's was great.

The Vehicle Code prohibits tailgating (Veh. Code, § 21703), or stopping suddenly without a signal to the driver of a vehicle to the rear (Veh. Code, § 22109), or violating the basic speed laws (Veh. Code, § 22350). The facts above show a possible violation of all of these laws. The same facts also permit the possibility that such violations, if they occurred, proximately contributed to the accident.

Appellate court decisions emphasizing warning and expounding rules regarding the limited but useful scope of summary judgments are many. The purpose of the summary judgment is to weed out nonlitigable cases not to pretry and dispose of doubtfully successful ones. Over and over again it has been said that the procedure is drastic and should be used with caution (*Eagle Oil & Refining Co.* v. *Prentice* (1942) 19 Cal.2d 553, 556 [122 P.2d 264]; that the moving party's affidavits are to be strictly construed, those of his opponent liberally construed; and that "doubt" is to be

resolved against the moving party. (2 Witkin, Cal. Procedure (1954) pp. 1711, 1716.)

Particular danger signals are indicated in·what we may conveniently refer to as "demeanor" cases. (They have sometimes been called "credibility" cases; see, Bauman, *California Summary Judgment; A Search For a Standard,* 10 U.C.L.A. L. Rev. 347, 351 et seq.) These refer to cases in which the existence or nonexistence of a determinative fact depends upon the credibility to be given to testimonial evidence. Reference to the importance of "cross-examination" at a trial and the "demeanor of witnesses in giving their testimony" was made in a leading case where a summary judgment against a defendant was reversed by our Supreme Court under the concept of strict construction against the moving party, liberal construction in favor of his opponent. (*Eagle Oil & Refining Co.* v. *Prentice, supra,* 19 Cal.2d 553, 556.) A legal scholar, Professor John A. Bauman, whose research in the field of summary judgments has been extensive has decried the use of the strict-versus-liberal construction as an inadequate guide to trial courts. He states: "there are many cases, particularly those involving torts, where knowledge of the occurrence is fortuitous and not shared, and where the absence of controverting proof could not reasonably be the basis for an inference that the plaintiff's version of the occurrence is the true one. To avoid a summary disposition in such cases, the courts strictly construe the supporting affidavits and find them insufficient to substantiate a judgment. Incorrect decisions are thus avoided, but the opinions themselves become a mere matter of logomachy." (*Op. cit.,* 10 U.C.L.A. L. Rev. 356.)

Of course, in most, if not all, summary judgment cases there will be some testimonial evidence. To some extent, therefore, the credibility of witnesses is always a factor. But in most of the cases where a summary judgment has been granted credibility has not been a decisive factor.[2]

Professor Bauman's article mentioned has been cited in several California appellate court decisions. It was the subject of at least qualified approval in *Frye* v. *Felder* (1966) 246 Cal.App.2d 136, 139 [54 Cal.Rptr. 627] (hear. den.). Frye

---

[2]Professor Bauman (*op. cit.,* p. 350) refers to claims supported by admissions and undisputed documentary evidence, cases where there has been an agreement as to the facts by the parties and only a question of law is raised or where, applying the no-reasonable-minds-could-differ test, the question becomes one of law rather than of fact. For example, frequently "a summary judgment may . . . be proper because of the high credibility value accorded to documentary evidence."

was not a tort action. It also differs from the case before us in that the summary judgment there involved was in favor of plaintiff. The Bauman article was analyzed in the context of the following circumstances (on pp. 138-139) : "The problem of summary judgments based on uncorroborated declarations of interested parties, particularly where those opposing the motion are in no position to contradict the moving parties' showing. . . ." (That, of course, is partially the situation here. Only Purtle knows whether his foot slipped from the clutch or whether he took it from the clutch. But circumstantial evidence, facts hereafter to be elicited on cross-examination, or inferences to be drawn therefrom (or from other evidence) *could* prove that he and not Mac Dougal—or both Purtle and Mac Dougal—negligently caused this collision.) The following statement in *Frye* is also apposite to our case (pp. 139-140) : "[A]ny trier of fact would be justified in rejecting that part of Frye's story and, having done so, could disbelieve his entire testimony. [Citations.] . . . We think that before Frye recovers in this action, his testimony should be subjected to cross-examination before a trier of facts who can base the determination of the merits of his case not only on what he says, *but also on how he says it.*" (Italics ours.)

Professor Bauman concludes his article (*op. cit.,* p. 367) with the following observation : ". . . In determining whether a trial is necessary, the evidence presented in support of the motion must be judged not only as to its sufficiency to substantiate a claim of defense, but also as to its credibility. Unless creditibility issues inherent in that proof can be avoided by the burden-of-proof rule[3] or be resolved as a matter of law, a summary disposition is improper and a trial must be held. Standards formulated with these factors in mind will provide trial judges with practical guidance in disposing of motions for summary judgment. The result will be an improvement of decision making at the trial level with a

---

[3]In some cases the nature and strength of the affidavits of a moving party defendant when compared with the counteraffidavits, if any, of the opponent have made it abundantly clear that plaintiff cannot possibly sustain his burden of proof in the action; in short, he cannot possibly survive a nonsuit. In such cases the necessity of resolving "credibility" is obviated. (See, e.g., *Snider* v. *Snider* (1962) 200 Cal.App.2d 741 [19 Cal.Rptr. 709]; *Schessler* v. *Keck* (1956) 138 Cal.App.2d 663 [292 P.2d 314]; *Maltby* v. *Shook* (1955) 131 Cal.App.2d 349 [280 P.2d 541].) These cases are referred to by Professor Bauman (*op. cit.,* pp. 362-366). "Burden of proof" used in this context is not to be confused with the burden of proving, under Code of Civil Procedure section 437c, that there is no triable issue of fact. That burden, as we have shown (see *ante,* p. 397) is on the moving party.

consequent saving of time and expense. Promulgation of such standards by appellate courts is long overdue. Thirty-seven years of judicial legerdemain are long enough.

*Kramer* v. *Barnes, supra,* 212 Cal.App.2d 440, reversed a summary judgment in favor of a middle-car defendant in a multiple car rear end accident case. We find its facts indistinguishable from the action now before this court.[4] There is thoroughness in the restatement in *Kramer* of all the tests and rules applicable to summary judgments. We adopt them principally by reference (see pp. 444-449). We quote sparingly.

█ The court says (on p. 448) : "[W]hether in any particular case the operator of the rear vehicle is negligent if he drives his machine so as to cause a collision with the one ahead depends upon all the circumstances surrounding the happening of the accident, and almost invariably presents a question of fact for the decision of the jury. . . ." Also because Purtle argues that the doctrine of res ipsa loquitur is applicable where a stationary plaintiff's automobile is rear ended by a defendant's vehicle and cites two-car cases in support of the theory that Purtle is entitled to the benefit of that rule (e.g., *Alarid* v. *Vanier* (1958) 50 Cal.2d 617 [327 P.2d 897]), we note the following in *Kramer* to indicate how that argument can boomerang in a multi-car accident (on p. 448) : "It has also been held that a collision in which a following motorist collides with the rear end of a vehicle ahead is some evidence of negligence on the part of the following motorist. [Citations.]"

There are triable issues present in the case before us. Triable issues should be tried.

Judgment is reversed.

Friedman, J., and Janes, J., concurred.

---

[4] A five-car accident was involved in Kramer, a three-car accident here. It is, therefore, not a "spotted calf" case.