[Civ. No. 23969. Second Dist., Div. Two. Feb. 21, 1961.]

DAVID P. KURTZ, Respondent, v. LORENA O. KURTZ, Appellant.

Morris Abraham for Appellant.

Louis Sampson for Respondent.

ASHBURN, J.—Defendant wife obtained an interlocutory decree of divorce upon her cross-complaint on the ground of desertion. In her answer and in her cross-complaint defendant alleged that she is ill and unable to work; that she needs medical attention and medicines regularly; that she has no income of any kind and has no means with which to support and maintain herself; that plaintiff is an able-bodied man and able to support her. She testified as to her expenses for rent, food, clothes, doctor's bills and prescriptions, with the conclusion that her necessities required a minimum of $40 per week. Plaintiff is employed and has a weekly take-home pay of $143.

The court awarded her support of $50 per month for a period of two years, and it is from this order that defendant appeals. This award is based upon findings that ". . . the plaintiff and cross-defendant is able to pay to the defendant and cross-complainant, a reasonable sum for support," and that the sum of $50 per month is a "reasonable sum" for defendant's support, and for two years only.

Defendant filed objections to the findings and requested certain additional findings. After a hearing thereon the objections were overruled. It is contended here, as there, that the court erred in failing to make findings upon each of the above referred to allegations contained in her answer and cross-complaint. She claims that material issues of fact were raised by these affirmative allegations, and that she is entitled to specific findings thereon. Closely allied with this argument is appellant's contention that the evidence is insufficient to support the finding that $50 per month is a reasonable amount for her support.

Code of Civil Procedure, section 632, requires the trial court to make findings on all material issues in the case. However, findings should properly state only ultimate facts, not eviden-

tiary facts, and that is what was done in this case. *Jones* v. *Jones*, 135 Cal.App.2d 52, 63 [286 P.2d 908]: "While it is true that the court must make findings on all material issues in a divorce case as in other cases, and that the determination of alimony is a question of fact, the trial court is only required to find ultimate facts and is not required to find probative facts. In *LaMar* v. *LaMar*, 30 Cal.2d 898, 900 [186 P.2d 678], it was stated to be the rule that in divorce cases the duty to make findings 'is to find ultimate rather than probative or evidentiary facts. Findings of ultimate facts are controlling unless drawn as conclusions from findings of probative facts that do not support them. [Citations.]' The circumstances of the parties—i.e., the husband's ability to pay and the wife's needs—are merely probative of the ultimate fact of alimony. This was clearly inferred if not directly held in *Hall* v. *Hall*, 42 Cal.2d 435 [267 P.2d 249]."

 The findings herein are sufficient, and are supported by the evidence. They comply with the amendment of 1959 to section 632, Code of Civil Procedure: "The statement of facts found shall fairly disclose the court's determination of all issues of fact in the case." "The principles which the trial judge must apply in awarding alimony are few and necessarily general in nature. An allowance for support must be made 'having regard for the circumstances of the respective parties.' (Civ. Code, § 139.) In making that award the trial court has a wide discretion. [Citation.] 'Circumstances' includes 'practically everything which has a legitimate bearing upon the present and prospective matters relating to the lives of both parties.' [Citation.] '[I]t refers to the needs of the parties and the abilities of the parties to meet such needs; and in measuring such circumstances, consideration should be given to property owned and obligations to be met as well as to ability to earn and actual earnings.' (*Becker* v. *Becker*, 64 Cal.App.2d 239, 242 [148 P.2d 381].)" (*Hall* v. *Hall*, 42 Cal.2d 435, 442 [267 P.2d 249].)

 The parties were married in July 1952, and separated on October 13, 1956. Defendant was 44 years of age, and plaintiff 49, at time of trial in 1958. Defendant testified that shortly after the plaintiff left her, she went to a Dr. Hoffman upon the recommendation of her attorney; that the treatment received from him consisted entirely of prescriptions; "he has been trying me out on different types of medicines"; and at the time of trial she was taking "miltown." She described her ailment as "nervous spasms, and

in case of any type of a shock they can turn into convulsions, and if it is a shock that is too severe, it can turn into epileptic.'' She said she had had this condition since she was 6 years of age, and that no one had been able to find any organic cause for it. She testified that she had been married six times and, despite her ailment had worked steadily throughout the other marriages, and during the first year of her marriage to plaintiff. Since then, ''Well, I had these spells, and I haven't been able to work steadily like I used to.'' She stated that at the present time she is unable to work. Defense counsel asked plaintiff to stipulate that, if called, Dr. Hoffman would testify that defendant would not be able to work again. Plaintiff's counsel refused to so stipulate and the doctor was not called as a witness; nor was any other medical testimony offered.

Plaintiff testified that his monthly expenses for food, rent, transportation, utilities, laundry and cleaning, life insurance, automobile insurance, clothes, incidentals, and car payments, total $465. In addition, there are outstanding indebtednesses upon which he is paying: a $400 Household Finance Company loan on which he is paying $30 per month; $260 to his dentist, at $24 per month; $100 to his doctor at $10 per month; $40 per month upon a salary loan. Mathematically, it will be noted that these monthly payments added to the amount of plaintiff's living expenses total $569 per month. Adding to this the $50 alimony award, we get a total of $619, the exact amount of plaintiff's monthly income. In addition, he owes a $200 personal loan; $110 to his wife's doctor and $55 to her druggist; $50 to a court-appointed psychiatrist who examined his wife, and attorneys' fees in this case.

Appellant claims that her testimony that she is ill and unable to work, and as to the amount necessary for her support, is uncontradicted and that ''the findings of the trial court must be in accordance with the uncontradicted testimony of the appellant.''

True, unimpeached and uncontradicted testimony of a witness not inherently improbable, cannot be arbitrarily disregarded. However, ''It may be stated that a trial judge or jury is not required to blindly believe a witness nor to find in accordance with his statements merely because his testimony is uncontradicted or unimpeached by the party against whom he testifies. (*Murphey* v. *Virgin*, 47 Neb. 692 [66 N.W. 652].) 'The most positive testimony of a witness may be contradicted by inherent improbabilities as to its

accuracy contained in the witness' own statement of the transactions; or there may be circumstances in evidence in connection with the matter which satisfy the court of its falsity; the manner of the witness in testifying may impress the court with a doubt as to the accuracy of his statement and influence it to disregard his positive testimony as to a particular fact; and as it is within the province of the trial court to determine what credit and weight shall be given to the testimony of any witness, this court cannot control its finding or conclusion denying the testimony credence, unless it appears that there are no matters or circumstances which at all impair its accuracy.' (*Davis* v. *Judson,* 159 Cal. 121, 128 [113 P. 147, 150]; *Blanc* v. *Connor,* 167 Cal. 719 [141 P. 217]; *Cox* v. *Schnerr,* 172 Cal. 371 [156 P. 509].)'' (*Travis Glass Co.* v. *Ibbetson,* 186 Cal. 724, 727-728 [200 P. 595].) See also *Hicks* v. *Reis,* 21 Cal.2d 654, 659-660 [134 P.2d 788]; *Blank* v. *Coffin,* 20 Cal.2d 457, 461 [126 P.2d 868]; Code of Civil Procedure, section 1847; 19 California Jurisprudence 2d, section 475, page 240; section 476, page 241; Witkin, California Evidence, section 480, page 536; section 482, pages 537-538.

Defendant testified to no ''spells'' since her separation from plaintiff. By her own testimony, she had worked steadily for many years, despite the same condition which she now claims prevents her from working. No medical corroboration was offered as to her physical or mental condition or to support her statement that she is unable to work. No excuse was offered for the failure to produce her doctor. The fact that defendant was being treated, or under a doctor's care, ''does not require the conclusion that [she] was wholly incapacitated for work. We think it is common knowledge that many people suffering from some ailment for which they are receiving treatment continue their usual employment for considerable periods of time, nor is an ailment which incapacitates a person for a particular line of work a sufficient reason why a trial court should come to the conclusion that such person is not able to earn money in other fields of labor. To determine this question the trial court must necessarily have some knowledge of the intellectual capacity of the persons in question, their intelligence, their power of adaptability, none of which can properly be considered by this court upon appeal. The presence of the parties involved is the essential equation in order to approximate a conclusion as to whether anyone is so endowed as to capacitate him to

perform some labor, and, at least, make a reasonable effort toward self-support.'' (*Lamborn* v. *Lamborn,* 80 Cal.App. 494, 498 [251 P. 943].)

Upon the record, taking into consideration the trial court's personal observance of defendant, there was a rational ground for disbelieving portions of defendant's testimony. The trial court was justified in concluding that defendant was not entirely disabled and that there was no real disposition on her part to earn any part of her own living. Viewing the evidence as to the needs and abilities of the respective parties in the light of the above stated rules, we are of the opinion that the findings of the court, and the award of $50 per month for a two-year period, find sufficient support therein. Though this sum may seem inadequate upon its face the record affords considerable justification for it even if we were free to decide the question independently. This 44-year-old woman, embarked upon a sixth marriage which lasted only four years, was, according to the husband's testimony, bothered by spirits, and withheld from him for most of the time normal marital intimacies. He on the other hand was much troubled by various spirits, and at one time was a licentiate minister of the Spiritualist Church. The problem of adjusting the financial problems of these two unusual people was peculiarly one for the exercise of a sound judicial discretion by the trial judge. We cannot say that he abused his discretion in any respect.

Appellant claims that the ''judgment is unfair, unjust, abuse of discretion and the result of prejudging or predetermination and a disinclination generally and particularly to allow alimony.'' This claim is based upon statements made by the trial judge with respect to the importance of plaintiff's putting on evidence in support of his case. After the court had heard evidence upon cross-complainant's cause of action on grounds of desertion, and both parties had testified as to the amount of their respective living requirements, the trial judge interrupted the proceedings to inquire about plaintiff's cause of action. Counsel advised the court that he was going to let defendant proceed upon the desertion matter and offered to withdraw his complaint. The court did not permit this to be done; but, rather, insisted that plaintiff put on testimony, reminding him that under the code, in the absence of an agreement, alimony is not awarded when the divorce is granted to the husband for the fault of the wife. Plaintiff's counsel said he was aware of the rule

and realized that the court would have the right to award alimony; that he was willing to permit defendant to obtain the divorce and was "perfectly willing that the Section be followed"; was "prepared to take our chance" on "such terms as the Court deems just." The Court stated: "It isn't quite that easy, because the testimony is without rebuttal, and that is why I want to get rebuttal, so I can take this case with perfect fairness to each side. . . . I want to see that you, as well as the defendant, has [sic] grounds to substantiate what I decree here." Thereupon, plaintiff testified in support of his cause of action based upon grounds of extreme cruelty. He was thoroughly examined and cross-examined. Defendant testified at length and was questioned extensively by the trial judge. Plaintiff was further interrogated under section 2055, Code of Civil Procedure. The result was the awarding of the divorce to defendant upon her cross-complaint and the alimony award as hereinabove stated.

During the colloquy described, defendant's counsel raised no objection and in no way indicated that he considered the matter to be prejudicial to the defendant. ■ In *Weil* v. *Weil,* 37 Cal.2d 770, the court states at page 776 [236 P.2d 159] : "A judge may properly indicate to litigants the hardship that may result from a rigid insistence upon technical rights. Such suggestions are peculiarly appropriate in a court of equity, and all the more so when the task before the court involves the difficult social and legal adjustments that attend the tragedy of an unsuccessful marriage." (See also *Chalfin* v. *Chalfin,* 121 Cal.App.2d 229, 237 [263 P.2d 16].)

■ *Estate of Dupont,* 60 Cal.App.2d 276, 290 [140 P.2d 866] : ". . . a judge is not a mere umpire presiding over a contest of wits between professional opponents, but a judicial officer entrusted with the grave task of determining where justice lies under the law and the facts between the parties who have sought the protection of our courts. Within reasonable limits, it is not only the right but the duty of a trial judge to clearly bring out the facts so that the important functions of his office may be fairly and justly performed." (See also *Martin* v. *Martin,* 79 Cal.App.2d 409, 410 [179 P.2d 655].)

■ The trial judge's expressed desire that "I want everything before me" appears to have been fulfilled in substantial measure, and the decision is predicated upon the facts presented, in complete fairness to both parties. It is

fully supported by the evidence and is in accordance with the law. Civil Code, section 139, provides that the amount and the manner of payment of alimony are within the discretion of the trial court; that it may make "such suitable allowance for support and maintenance of the other party for his or her life, or for such shorter period as the court may deem just, having regard for the circumstances of the respective parties. . . ." (See *Hall* v. *Superior Court,* 45 Cal.2d 377, 384 [289 P.2d 431]; *Bowman* v. *Bowman,* 29 Cal. 2d 808, 811 [178 P.2d 751].) We find no legal abuse of discretion by the trial judge.

The record discloses that, in addition to the appeal from that portion of the interlocutory decree awarding alimony, appellant states that she appeals from that portion of the decree which states "all temporary orders of maintenance and support heretofore made, other than the attorney's fees and costs as may be in arrearage, are hereby vacated." No point is made of this matter in appellant's brief and it is deemed waived.

Appellant also noticed her appeal "from the order denying motion for transfer of hearing on the motion for new trial" to a judge other than the judge who tried this matter, on ground of prejudice. In her brief, appellant makes no reference whatever to this order. We therefore shall assume that the appeal therefrom has been abandoned. (*Collins* v. *Nelson,* 41 Cal.App.2d 107, 112 [106 P.2d 39].)

There is a further purported appeal from "all other orders and rulings made in the above entitled cause" which orders are themselves nonappealable. They, likewise, are not mentioned in the brief, and are dismissed.

Judgment is affirmed.

Fox, P. J., concurred.