[Civ. No. 24786.   Second Dist., Div. One.   Mar. 21, 1961.]

BEVERLY HILLS THRIFT AND LOAN (a Corporation), Respondent, v. WESTERN DREDGING AND CONSTRUCTION COMPANY (a Partnership) et al., Defendants; FAWNSKIN DEVELOPMENT AND AMUSEMENT COMPANY (a Corporation), Third Party Claimant and Appellant.

Robert J. Simpson for Third Party Claimant and Appellant.

Gold, Sturman & Gold for Respondent.

FOURT, J.—This is an appeal by a third party claimant from a judgment determining that such claimant was not the owner nor was it entitled to possession of certain described personal property.

On September 26, 1958, the plaintiff loaned to the defendant Western Dredging and Construction Company the sum of $19,860. The loan was evidenced by a promissory note signed by Frank M. Shallue and Frank L. Smith as copartners, and secured by a chattel mortgage of the same date, upon certain described items including, among other things, a suction dredge and items apparently connected or associated with the dredge, which was located at the Salton Sea beach, Imperial

County. The defendants defaulted in their payments on the note, and plaintiff brought an action to foreclose the chattel mortgage and for a deficiency judgment. Judgment was rendered substantially for the amounts requested in the complaint, and the court ordered the chattels sold as provided by law, the plaintiff to have a deficiency judgment for any balance remaining due under the judgment after applying thereto the proceeds of the sale. Plaintiff started proceedings for the foreclosure sale of the dredge and the equipment. Fawnskin Development and Amusement Company (hereinafter referred to as appellant) filed its third party claim. The plaintiff then filed the proceeding provided for in section 689, Code of Civil Procedure. After a trial the court denied the third party claim and gave judgment accordingly and this appeal is from that judgment.

A résumé of the facts is as follows:

Appellant completed the building of the dredge in question in 1951. Frank Smith was the largest stockholder of appellant, owning 564 out of 1,310 shares, and the next largest holder of stock was V. B. Pederson, who owned 183 shares. Smith, who was associated with the appellant, built the dredge in the first instance. Smith was elected president of appellant on June 3, 1954, and served as such until 1959. No meetings of the board of directors or of the stockholders of appellant were held from January 11, 1955, to September 6, 1958.

On June 11, 1955, Pederson, as vice-president and on behalf of appellant, made a contract with the Frank Smith Syndicate, by which full responsibility for the dredge was turned over to the so-called Frank Smith Syndicate. The contract was signed by Frank Smith. No person, other than Frank Smith, ever became a member of the Frank Smith Syndicate. The contract, among other things, recited that a group of men headed by Smith were desirous of securing the assets of appellant; that the syndicate agreed to buy and the appellant agreed to sell the assets of appellant, including the dredger and the equipment, and further that the syndicate was to pay certain accounts payable which appellant deemed urgent. The syndicate was authorized to use any equipment of appellant, however, the cost of reconditioning the same was to be borne by the syndicate, which also was to care for and maintain the dredger until such time as appellant gave a bill of sale. The bill of sale was to have been delivered to the syndicate after the syndicate had performed certain acts. There is no evidence

in the record as to whether the syndicate did or did not perform the designated acts required under the contract.

The books of appellant indicate that all of its accounts and obligations had been assumed by the syndicate as of June 11, 1955. The bank account of appellant was closed September 5, 1955. There was no corporate activity between December 1955 and September 1958, except that the franchise tax was paid in 1958. The authority of the syndicate over the dredge was extended to December 31, 1957, by a letter dated June 8, 1956. After December 31, 1957, no meeting of the directors of appellant was called with reference to the possession of the dredge. On April 7, 1958, Smith wrote a letter to Pederson, which directed attention to the condition of the dredge, and stated in effect that it had major leaks, was partly under water, and in bad disrepair; further that the repair costs were appalling and that the cost of salvaging the dredge would be considerable; that he, Smith, was trying to convince the Western Dredging Company to finance and conduct the salvaging operations with his help; that something had to be done forthwith or the dredge abandoned to the elements and vandals; further that he would have to make the best deal he could with Western Dredging Company with the stockholders of appellant going along with the deal, or abandon the dredge to the weather and vandals. There is no evidence of any response to the letter from Smith.

In April 1958 the dredge was dismantled and removed by Smith from Big Bear Lake to the Salton Sea, with the knowledge and partly in the presence of Pederson. No action was taken by appellant to stop Smith from removing the dredge to the Salton Sea. At the time of removal the dredge was practically worthless.

The dredge was rebuilt by Western Dredging and Construction Company at their expense. Western Dredging was pressed for money to pay the salvage costs and none was available. Smith then turned the dredge over to Western Dredging Company for their salvage bills. At the time just mentioned Smith was not a partner in Western Dredging and Construction Company. Smith treated the dredge and equipment as abandoned property and acted in behalf of appellant in removing the dredge to Salton Sea and in turning it over to Western. Smith stated in effect that he felt he was empowered to so act because of the extreme emergency. There-

after Western Dredging Company did do some dredging operations in the Salton Sea.

Pederson succeeded Smith as president of the appellant in the early part of 1959 but did not go to the Salton Sea to examine the dredge after its removal from Big Bear Lake in April 1958, until May or June of 1959. When Pederson, who was the first officer of appellant to inspect the dredge at Salton Sea, saw the dredge the name Western Dredging Company was painted thereon. Certain documents referred to at the trial also indicated that Western Dredging Company was the owner of the dredge at the time the loan was made by the plaintiff, namely appraiser's reports dated June 11, 1958, insurance policies and a guarantee letter listing Western as the owner.

Smith told the plaintiff at the time of the loan that he was a partner in Western Dredging Company and he was in fact such a partner at the time he signed the note and mortgage.

Plaintiff had no notice of any kind that anyone in San Bernardino County had any claim to the barge or equipment. The loan proceeds were paid to Western Dredging Company.

Appellant now asserts in effect that the evidence was not sufficient to sustain the judgment. The only real question involved is whether the record discloses as a matter of law that the third party claimant owned the items in question.

Under section 689, Code of Civil Procedure, the third party claimant has the burden of proof. At the hearing appellant produced Pederson as its only witness. As to twelve of the items listed in the first instance there can be no question, because even Pederson himself would not say that such items belonged to the appellant. The contest involves the remaining items. Having in mind that appellant had the burden of establishing either title or right of possession the record discloses that there was no inventory or partial inventory of the dredge parts ever produced, and that there was some doubt as to whether such ever existed; no bill of sale was ever produced to any part of the dredge, no invoices were ever produced for any part of the dredge, there was no evidence excepting the rather hazy recollection of Pederson that the parts of the dredge at Salton Sea were the same as the dredge which was at Big Bear Lake.

Smith testified that he personally owned the suction piping and certain motors and hoist and winch which were listed.

In a claim presented as in this case the trial judge

determines the credibility of the witnesses. As stated in *Watwood* v. *Steur*, 89 Cal.App.2d 620 at page 624 [201 P.2d 460]:

"... in effect, that, because the Steurs and the third party claimants testified that the properties belong to appellants, the trial court was bound by their testimony. That is not the law. The trial judge saw these witnesses. He knew of the interest of the Steurs and of the appellants in convincing the court that the properties belonged to appellants. (See cases collected 27 Cal.Jur. § 154, p. 179, on the importance of this factor.) He has seen fit to find that appellants did not sustain the burden that was upon them. If it be assumed that the only evidence in the case on this issue was that of appellants and of the Steurs (which assumption is contrary to the fact), nevertheless, the trial court was not necessarily bound by even this assumed uncontradicted testimony. While, under section 1847 of the Code of Civil Procedure a witness is presumed to speak the truth, the same section provides that: 'This presumption, however, may be repelled by the manner in which he testifies, by the character of his testimony . . . or his motives, or by contradictory evidence.' The trier of the fact is the exclusive judge of the credibility of the witnesses. Provided he does not act arbitrarily, the trial judge may reject *in toto*, the testimony of a witness even though the witness is uncontradicted. (*Hicks* v. *Reis*, 21 Cal.2d 654 [134 P.2d 788]; *Blank* v. *Coffin*, 20 Cal.2d 457 [126 P.2d 868]; *Davis* v. *Judson*, 159 Cal. 121 [113 P. 147]; see cases collected 27 Cal.Jur. § 156, p. 182; 8 A.L.R. 796.)"

No findings are required in a proceeding under the section involved and consequently our review is limited by the rule that all presumptions and inferences applicable must go to support the judgment. *Maguire* v. *Corbett*, 119 Cal.App. 2d 244, 248 [259 P.2d 507]. Section 1963, subdivision 11, Code of Civil Procedure, provides that it is a rebuttable presumption, "That things which a person possesses are owned by him;" and subdivision 12 also provides that it is a rebuttable presumption "That a person is the owner of property from exercising acts of ownership over it, or from common reputation of ownership." These presumptions are evidence and support the judgment.

Appellant was not in possession of the dredge after June of 1955. Possession was in Smith until the dredge was moved to the Salton Sea, and then it was in possession of Western

Dredging and Construction Company. The judgment on the note and mortgage was against both Smith and Western.

The evidence is clear that appellant placed Smith in a position where he could and did act in effect as the general manager of appellant. Smith was in reality given full control over the appellant's only asset, together with the duty to maintain it. The appellant ceased to do any business after it turned its property over to Smith. Appellant held no stockholders' or directors' meeting during the period when Smith controlled its property. In short, the appellant vested Smith with apparent full authority and abdicated its corporate responsibilities. The authority of an agent may be implied from certain circumstances. *Gaine* v. *Austin,* 58 Cal. App.2d 250, 261 [136 P.2d 584]. Smith had ostensible authority to act. See *Hill* v. *Citizens National Trust & Savings Bank,* 9 Cal.2d 172 at 176 [69 P.2d 853].

Western Dredging Company believed that Smith was the owner of the dredge when it performed its salvage operations and had no knowledge of appellant's claimed interest.

It is possible that Smith intended to defraud the appellant and perhaps even to defraud the plaintiff, but as between the plaintiff and the appellant any injury or loss must fall upon the appellant for appellant placed Smith in the position where he could do what he did do. *Shirey* v. *All Night & Day Bank,* 166 Cal.50 [134 P. 1001]; *Conklin* v. *Benson,* 159 Cal. 785 at 793 [116 P. 34, 36 L.R.A. N.S. 537].

It is apparent that appellant failed to sustain the burden of proof.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.