[Civ. No. 25828. Second Dist., Div. One. June 13, 1962.]

FRANK J. GANAHL, Plaintiff and Appellant, v. CERTAIN
INDIVIDUALS doing business as Underwriters at
Lloyd's London, et al., Defendants and Respondents.

Robert P. Stebbins and Burton Marks for Plaintiff and Appellant.

Crider, Tilson & Ruppé, Edward A. DeBuys and Abe Mutchnik for Defendants and Respondents.

FOURT, J.—This is an appeal from an order granting the defendants' motion for a new trial in a case involving a disability insurance policy.

Chronologically, events occurred as follows: Plaintiff was employed as an aircraft traffic control officer from a time in 1950 to sometime in July 1956.

On or about March 9, 1955, while on the job at the Santa Monica Airport, plaintiff fell down a flight of stairs. He went to the hospital for an examination as a result of the fall and stayed home from work for four or five days. Later he took a course of treatments with Dr. R. Lewis, M.D., and Dr. John E. Bergmann, M.D., for the injuries received in the fall (including a back injury). Treatments were continued through March into April 1955. Plaintiff discontinued further treatments against the advice of his doctors. The doctors' report indicated that there had been contusions in the lumbo-sacral region; five days later (March 14, 1955) plaintiff had complained of pain in the lumbo area; on March 24, 1955, there was tenderness in the sacral area; April 14, 1955, plaintiff did not return and a follow-up letter was written on May 3, 1955.

In June 1955 the defendant solicited the aircraft control operators with reference to a group insurance disability plan. Sufficient numbers of the operators (including plaintiff) evidenced an interest in the idea and later, after negotiations, a group plan was authorized. The offering brochure contained certain questions and answers.[1]

On September 28, 1955, the plaintiff signed an application for the disability insurance to be issued by the defendant.[2]

On September 30, 1955, plaintiff returned to Dr. Berg-

[1]Question No. 9:
"9. Q. Who is eligible? A. All Airport Traffic Controllers who are less than age 60 and actively working as Controllers at the time of application. The applicant must be in good health to the best of his knowledge at the time of application."

Question No. 16:
"16. Q. What are the exclusions? A. 1. Physical Conditions about which the Controller is aware at the time of application which might affect his CAA approved medical status.
". . . . . . . . . . ."

[2]The application of plaintiff stated in part: "I FURTHER DECLARE that at the present time I am neither ill nor have I any disability that to the best of my knowledge will cause me to lose my medical certification to function as a control tower operator either temporarily or permanently."

Further it was set forth: ". . . the insurance Carrier must be careful not to accept any operator who is aware of a condition at the time of application which might cause him to lose his medical certification."

mann's office, where he complained to the doctor about recurrent *low back pain for the past week.*

On October 3, 1955, the report of Dr. Bergmann indicates that plaintiff had stated to the doctor that the diathermy had been ineffective, that he had been unable to bend over or do any heavy lifting and that he had constant backache.

On October 8, 1955, plaintiff was admitted to a Santa Monica hospital for treatment of the back ailment. He was in traction until October 17, 1955, and on the latter date a gravity cast was applied and plaintiff was discharged from the hospital.

On November 1, 1955, the disability insurance coverage with which we are concerned went into effect. Plaintiff was unable to work on or about November 1st and was wearing a cast, which he continued to wear for a time and then wore a brace for some time thereafter.

After November 1, 1955, plaintiff was transferred from the Santa Monica Airport to the Los Angeles International Airport.

Plaintiff testified that on January 22, 1956, while at work at the Los Angeles Airport, he tripped over a piece of pipe on the airport grounds and fell. Plaintiff apparently told few, if any, persons about this fall. In appellant's opening brief it is set forth:

"It is admitted that until Ganahl saw Attorney Stebbins in the year of 1958, he did not relate the happening of the January 22, 1956 accident to anyone, including all of his doctors, his prior attorney, the Federal Government, or anybody else."

Plaintiff filed a claim for compensation on account of an injury, the claim being in the form of an affidavit, and in part read as follows:

"Claim for Compensation on Account of Injury

" . . . . . . . . . .

"9. Time of injury <u>Wednesday March 9, 1955 0750 P, 1955</u>
 [Date]

 <u>Wednesday</u> <u>0750P</u> m.
 [Day of week] [Hour a.m. or p.m.]

"10. Disability for work began <u>March 9, , 1955</u> . . .

" . . . . . . . . . .

"19. Cause of injury <u>I fell down the Tower Stairs as was on
 my way to the mens rest room.</u>

"20. Nature and extent of injury causing disability <u>Cracked Disk and constant pain in legs and back</u>

" . . . . . . . .

"I HEREBY make claim for compensation on account of the injury described above. . . . I have been disabled on account of this injury. . . .

"Signed this <u>19th</u> day of <u>March, 1956,</u> at <u>Los Angeles, California</u>"

On May 29, 1956, there was a letter from plaintiff's then attorney to the United States Department of Labor, Bureau of Employees' Compensation, which stated in part:

"Please be advised that I am representing Mr. Frank Ganahl in his endeavors to secure employee's compensation benefits for the residuals of the industrial injury he sustained on March 9, 1955, while employed by the Civil Aeronautics Administration as a result of falling down a flight of stairs in the control tower.

"Mr. Ganahl has been temporarily totally disabled, because of the residuals of this injury to his low back and legs, since March 9, 1955, for intermittent periods, until March 5, 1956, from which date he has been completely totally disabled from gainful employment up to and including the present time. . . .

"CONSENT OF THE INJURED EMPLOYEE: Frank J. Ganahl.

"/s/ Frank J. Ganahl"

On April 3, 1956, a letter of the plaintiff to United States Department of Labor, Bureau of Employee's Compensation, in answer to the department's letter of March 5, 1956, stated in part as follows:

". . . at approximately 8 A.M. on March 9, 1955, this writer was working in the control tower at Santa Monica Airport and started to the restroom which is one floor below the tower; 13 steps down. These steps are quite hazardous with only about half-footing, and I fell on my back. . . . Due to the condition resulting from the fall on March 9, 1955, I was unable to fulfill the requirements of my position with the C.A.A., and as of March 5, 1956, I have been on 'sick leave' from the job. . . ."

In April 1956 plaintiff was examined by a doctor for the Civil Aeronautics Administration and plaintiff's license as an operator was revoked because of plaintiff's physical unfitness.

On June 18, 1956, plaintiff's attorney mailed a letter to the

United States Department of Labor, Bureau of Employees' Compensation (a copy of which was mailed to plaintiff) wherein it was stated in part:

"Enclosed please find the report of Dr. John R. Black, orthopedist, dated June 6, 1956, pertaining to the injury sustained by Mr. Frank J. Ganahl on March 9, 1955, and his present disability. . . .

"In response to yours of June 1, 1956, I do not agree with you that the evidence of record is not such as to establish a relationship of the alleged recurrence to the original injury. In fact, I believe the record is quite clear that the present disability is entirely the result of the injury of March 9, 1955."

On or about July 12, 1956, a laminectomy operation was performed on plaintiff and an intervertebral disc was removed.

On August 29, 1956, there was a "Claim for Continuance of Compensation on Account of Disability" certified by the plaintiff, wherein he certified that "on account of the injury sustained by me on March 5, 1955" he was "disabled from March 9, 1956, to present."

On November 27, 1956, a claim for continuance of compensation on account of disability was certified by the plaintiff in part as follows: ". . . on account of the injuries sustained by me on June 9, 1955" he was "disabled from 11-28-56 to December 10, 1956."

January 4, 1957, plaintiff certified that: ". . . on account of the injuries sustained by me on March 5, 1955" he was "disabled from December 19, 1956 to January 1, 1957."

On February 6, 1957, a "Claim for Continuance of Compensation on Account of Disability" was certified by plaintiff, wherein it was stated that "on account of the injuries sustained by me on March 5, 1955" he was "disabled from _____, 19__, to February 6, 1957."

On March 2, 1957, a "Claim for Continuance of Compensation on Account of Disability" was certified by plaintiff, wherein it was stated that "on account of the injury sustained by me on March 5, 1955" he was "disabled from Feb. 6, 1957 to March 12, 1957."

On March 24, 1957, a "Claim for Continuance of Compensation on Account of Disability" was certified by plaintiff, wherein it was stated that "on account of the injury sustained by me on March 9, 1955" he was "disabled from March 11, 1957 to March 24, 1957."

On June 4, 1957, the plaintiff filed this action in the superior court to recover under the disability policy.

On November 13, 1957, plaintiff filed his first amended complaint in this action.

On December 14, 1957, plaintiff certified a "Claim for Continuance of Compensation on Account of Disability" wherein he set forth that "On account of the injuries sustained by me on March 5, 1955" he was "disabled from May 1, 1957, to December 14, 1957."

On November 23, 1960, plaintiff filed his supplemental complaint in this cause. Trial was started on November 23, 1960, and upon the completion thereof a verdict was rendered by the jury (ten to two) for the plaintiff in the sum of $18,000.

December 30, 1960, defendant filed its notice of intention to move for new trial.

January 27, 1961, the motion was made and argument was heard.

February 20, 1961, the trial judge filed and signed a memorandum on order granting motion for new trial wherein the judge under the title "Rulings" set forth:

"II. The motion of Defendant for a new trial is hereby granted, upon the ground of the insufficiency of the evidence to sustain or justify the verdict."

February 21, 1961, the clerk entered a minute order which reads as follows:

"Defendants' Motion for a New Trial, heretofore Submitted on points and authorities, is now by the Court Granted.

"Copies of Memorandum on Order Granting Motion for New Trial are mailed to counsel."

This appeal followed in due course.

Appellant states in his opening brief: "This appeal is brought here for review after a granting of a motion for new trial on the express grounds of insufficiency of the evidence. . . ." It is then asserted by appellant as follows:

"1. The trial court erred in finding that as a matter of law, the testimony of the plaintiff was not entitled to any consideration by the trier of fact. As a matter of law, the plaintiff's testimony was entitled to consideration by the trier of fact, and therefore the evidence was not insufficient, and the verdict was not 'contrary to law.'

"2. *Subsidiary Points:*

"(A) When defendants withdrew their affirmative defense of 'fraud and misrepresentation,' they and the trial court

were precluded from later asserting all or part of such a defense in the motion for new trial;

"(B) The Pre-Trial Stipulations and Order superseded and cured any defect in the pleadings."

 It is urged that because the judge, after making a positive and unequivocal order that "[t]he motion of Defendant for a new trial is hereby granted, upon the ground of the insufficiency of the evidence to sustain or justify the verdict" made some further statements with reference to what things the order was based upon this court must assume that the trial court granted the motion because the verdict was against the law and not because of the insufficiency of the evidence. There is no merit to the appellant's contentions.

In *Bridgeford* v. *Sawyer*, 105 Cal.App.2d 631, 633 [234 P.2d 95] the court had before it an order of the trial court granting the defendant's motion for a new trial, which order concluded as follows:

" 'For the foregoing reason the Court is of the opinion that the evidence is insufficient to justify the verdict of the jury and for that reason is against the law.' "

The appellate court held that there was no question but that the import of the language of the order was that the basis of granting the new trial was insufficiency of the evidence. The court then stated:

"Furthermore, the reasoning of the court as set forth in the order itself will not be here considered to show that sufficiency of the evidence was not the true basis of the order or to overthrow the trial court's ruling."

In *Yarrow* v. *State of California*, 53 Cal.2d 427 [2 Cal. Rptr. 137, 348 P.2d 687] the trial judge made an order which indicated that the defendant's motion for a new trial was being granted on the ground of insufficiency of the evidence; however the order also contained many paragraphs of comment by the trial judge from which it appeared that the court really did not believe that the plaintiffs actually had a cause of action at all. Appellants there argued that the minute order showed on its face that the real basis of the order granting the motion for a new trial was that the verdict was against law and not for insufficiency of the evidence. The Supreme Court stated at 437:

"The order is measured by its terms and not by any reasons the court may give for it. (*Weisser* v. *Southern Pacific R. Co.*, 148 Cal. 426, 428 [83 P. 439, 7 Ann.Cas. 636]; *Newman* v. *Overland etc. Ry. Co.*, 132 Cal. 73, 75 [64 P. 110].) It is recognized that 'the reasons given by the court for its action

may be bad, and the decision, at the same time, correct for other reasons. It is the action of the court that is presumed to be correct and this presumption obtains even though the reasons given may be bad.' (*Power* v. *Fairbanks, supra,* 146 Cal. 611, 615 [80 P. 1075]; *Davey* v. *Southern Pacific Co.,* 116 Cal. 325, 330 [48 P. 117].) [14] The reasons stated may be valuable in illustrating the trial judge's theory but they are not binding on an appellate court (*Scannell* v. *Schmidt,* 128 Cal.App.2d 19, 22 [274 P.2d 455]) and they may never be used to impeach the order or judgment. (*DeCou* v. *Howell,* 190 Cal. 741, 751 [214 P. 444].) Special considera- tion has been given to the trial court's statement of reasons in situations where they really constituted the only grounds upon which a judgment or order might be affirmed (*Coakley* v. *Ajuria,* 209 Cal. 745, 749 [290 P. 33]). However, that is not the situation here. As appellants point out, the recitals in this order are contradictory to the portion of the order deny- ing the motion for judgment notwithstanding the verdict. The argument advanced by them that unless the trial judge meant to qualify and limit his grant of the new trial about 90 per cent of the contents of his order was a pure waste of time, is not impressive in the face of the plain unequivocal language of the order denying that motion and granting the motion for new trial.

"[15] An order will not be deemed to be limited by an opinion or judicial reasoning unless the intention to limit is clearly expressed in the order. (*Classen* v. *Thomas,* 164 Cal. 196, 198 [128 P. 329].) The mere statement of reasons in the order is not sufficient to show much intention to limit. (*Bridg- ford* v. *Sawyer,* 105 Cal.App.2d 631, 633 [234 P.2d 95]; *Diaz* v. *Shultz,* 81 Cal.App.2d 328, 333 [183 P.2d 717].) *Long* v. *Newlin,* 144 Cal.App.2d 509, 511 [301 P.2d 271], relied on by appellants is not controlling here. In that case the order spe- cifically provided that it was 'granted upon the grounds of insufficiency of the evidence to show that it was not necessary to have an accounting.' Under the law an accounting was not necessary in that case and it was therefore held on appeal that the new trial had been granted on an erroneous ground. No other grounds than insufficiency of the evidence to prove this one phase of the case were urged on the appeal, or were appar- ently shown by the record on appeal, for granting or sustain- ing the order. In *Pacific Hardware & Steel Co.* v. *Cheim,* 169 Cal.App.2d 339, 342 [337 P.2d 508], cited by appellants, it was held that an order which is general 'and does not desig-

nate the ground on which it was granted ... must be presumed to be based upon grounds other than insufficiency of the evidence' and that if it may be inferred from a construction of the order as a whole that insufficiency is the ground, the order must be held to have been based upon such ground. *Piru Citrus Assn.* v. *Williams*, 95 Cal.App.2d 911, 915-916 [214 P.2d 426], is to the same effect, namely, that where the order granting the motion for new trial goes beyond a mere general order (i.e., 'a new trial is granted') and uses any language that reasonably can be construed as including insufficiency of the evidence, the language will be interpreted as including that ground. ▆▆ [16] The order here in question used specific language granting the new trial on this ground and no interpretation is required to reach that conclusion. Any language illustrative of the trial court's theory or contradictory to the order expressly made, is therefore irrelevant and must be disregarded. ▆▆ [17] As stated in *Stone* v. *Los Angeles County Flood Control Dist.*, 81 Cal.App.2d 902, 907 [185 P.2d 396] : 'The question that concerns the reviewing court is whether or not the final decision, judgment or order is correct and not whether the reasons expressed in the opinion are in harmony with the result reached or whether they sustain the decision.'

'' [18] The order with which we are here concerned recites the code provisions placed in issue at the trial and the court's opinion that the evidence does not show negligence in the operation of a motor vehicle by the state employees. Plaintiffs argue that either this was a case of 'negligent operation' under section 400 of the Vehicle Code, or it wasn't, and that it was solely a legal, not a factual, decision that was made by the trial court in granting the new trial. Under the rules hereinabove stated, however, in the absence of an express limitation in the order, all intendments must be applied in its favor. ▆▆ It must therefore be held that the recitals in the minute order made in the case at bar do not constitute a limitation on the order explicitly made and that the record discloses no abuse of discretion in granting a new trial on this ground. The order granting a new trial must therefore be affirmed upon the ground of insufficiency of the evidence.''

▆▆ There is in this case a decided contradiction between what the plaintiff certified to in some of the documents used by him in his claim for compensation and his testimony in this action. (See *Lorenzana* v. *Camarillo*, 41 Cal. 467; *Piru Citrus Assn.* v. *Williams*, 95 Cal.App.2d 911, 916 [214 P.2d 426].)

It is the rule in this state that if a witness has made conflicting statements under oath, and in this case appellant would practically admit to at least that much, a trial court may disregard his testimony in part or in toto and give whatever, if any, credence to it which he believes proper. In *Market Street Ry. Co.* v. *George,* 116 Cal.App. 572, 576 [3 P.2d 41], the court said:

"In this case we must assume in support of the order granting a new trial that the court chose to disbelieve Vlandis' testimony that he was on an errand of his own. This, under settled principles, the court was entitled to do if it could reasonably find that Vlandis had wilfully sworn falsely to a material fact. In *Estate* of *Friedman,* 178 Cal. 27, 32 [172 P. 140, 143], the Supreme Court said: 'If it can fairly be said that these witnesses wilfully swore falsely as to any material fact, the court was justified in rejecting their whole testimony. (Code Civ. Proc., § 2061, subd. 3.)'" (*Estate of Friedman,* 178 Cal. 27, 32 [172 P. 140]; *Norgard* v. *Estate of Norgard,* 54 Cal.App.2d 82, 90 [128 P.2d 566]; *Davis* v. *Judson,* 159 Cal. 121, 128 [113 P. 147]; *Kurtz* v. *Kurtz,* 189 Cal.App.2d 320, 324-325 [11 Cal.Rptr. 230]; *Riddle* v. *Fiano,* 194 Cal. App.2d 684 [15 Cal.Rptr. 248]; *Beverly Hills Thrift & Loan* v. *Western Dredging & Construction Co.,* 190 Cal.App.2d 298, 303 [12 Cal.Rptr. 107]; *Watwood* v. *Steur,* 89 Cal.App.2d 620, 624 [201 P.2d 460].)

In Volume 3, Witkin, California Procedure, page 2060, it is stated:

"In cases tried by jury, where this distinction is of most significance, it is said that a part has in fact *two hearings* [emphasis shown], one before the jury, and the other before the court as 'a thirteenth juror.' ██ ██ The judge presented with a motion for new trial on this ground may review conflicting evidence, weigh its sufficiency, consider credibility of witnesses, reject any testimony believed false and draw any reasonable inferences from the evidence. (See *Perry* v. *Fowler* (1951) 102 Cal.App.2d 808, 811 [229 P.2d 46]; *Peri* v. *Culley* (1931) 119 Cal.App. 117, 120 [6 P.2d 86]; ██ *Green* v. *Soule* (1904) 145 Cal. 96, 103 [78 P. 337] ['The parties are entitled to the judgment of the jury in rendering a verdict, in the first instance; but . . . are equally entitled to the independent judgment of the judge as to whether such verdict in supported by the evidence']; *Malloway* v. *Hughes* (1932) 125 Cal.App. 573, 580 [13 P.2d 1062]; *Hiraide* v. *Cochran* (1930) 109 Cal.App. 377 [293 P. 165]; *Estate of Bainbridge*

(1915) 169 Cal. 166 [146 P. 427]; *Fisher* v. *Zimmerman* (1937) 23 Cal.App.2d 696, 700 [73 P.2d 1243]; *Southern Cal. Edison Co.* v. *Gemmill* (1938) 30 Cal.App.2d 23 [85 P.2d 500]; *Witter* v. *Redwine* (1910) 14 Cal.App. 393, 395 [112 P. 311].)''

█ █ Furthermore in this particular case there was evidence to the effect that appellant himself had told his own doctor two days before executing the application for the insurance that for the past week he had recurrent low back pain—three days later he was unable to bend over and had an almost constant backache and five days later was in the hospital in traction, and on November 1, 1955, the date the policy came into effect, appellant was apparently unable to work and wore a cast.

Appellant further asserts that when the defendants withdrew their affirmative defense of ''fraud and misrepresentation'' they and the trial court may have been precluded from later asserting all or part of such defense in the motion for a new trial. Under the circumstances of this case there is no merit to the assertion of appellant.

Following the filing of respondents' brief appellant filed a reply brief in which, contrary to the rules, he raises new and different contentions. We granted the respondents' motion to file a supplemental brief to answer such newly raised contentions.

█ Appellant in his closing brief now asserts that the minute entry made by the clerk the day after the judge signed and filed the order granting the motion for a new trial upon the ground of insufficiency of the evidence makes no reference to the ground of insufficiency of the evidence and therefore there is no showing made by the respondent that the order was granted upon the grounds of insufficiency of the evidence.

The rule is as stated in *Wheeling* v. *Financial Indemnity Co.*, 201 Cal.App.2d 36, 44 [19 Cal.Rptr. 879], where it is said:

''It has long been the rule in this state that 'Appellate courts will notice only those assignments pointed out in the brief of an appellant, all others are deemed to have been waived or abandoned.' (*Title Guar. & Trust Co.* v. *Fraternal Finance Co.*, 220 Cal. 362, 363 [30 P.2d 515].) In *People ex rel. Dept. of Public Works* v. *McCullough,* 100 Cal.App.2d 101 [223 P.2d 37], the court said (p. 106): 'A court of appeal may properly consider the point as waived when it is not

presented in the opening brief.' (See to the same effect: *Utz* v. *Aureguy,* 109 Cal.App.2d 803, 807 [241 P.2d 639] ; *Schultz* v. *Steinberg,* 182 Cal.App.2d 134, 137 [5 Cal.Rptr. 890].) In *Richard* v. *Richard,* 123 Cal.App.2d 900 [267 P.2d 867], the court pointed out (p. 903) that: '[t]he obvious reason for this rule is that opposing counsel is not afforded an opportunity of answering the contentions of the appellant or of assisting the appellate court by furnishing it with the benefit of research. . . .'

"In view of these authorities, appellant must be deemed to have waived or abandoned this point."

(See also *Haley* v. *Traeger,* 92 Cal.App. 360, 365 [268 P. 459] ; *Fernandez* v. *Fernandez,* 194 Cal.App.2d 782 [15 Cal. Rptr. 374] ; *Estate of Bialy,* 185 Cal.App.2d 634, 638 [8 Cal. Rptr. 663] ; *Wilson* v. *Board of Retirement,* 156 Cal.App.2d 195, 207 [319 P.2d 426].)

In any event the case of *Casterline* v. *Young,* 167 Cal.App.2d 669, 670, 672 [334 P.2d 966] disposes of the matter. In *Casterline,* after the submission of the motion for a new trial, the trial judge filed a document entitled "Memo on Motion for a New Trial" wherein the trial court made certain statements. ■■■ The appellate court held:

"If there be any doubt as to the proper interpretation of the language of the minute order as entered by the clerk, the document signed and filed by the court and referred to in the minute order may be referred to for purpose of interpretation. (See *City of Daly City* v. *Smith,* 110 Cal.App.2d 524, 529 [243 P.2d 46] ; *People* v. *One 1951 Ford Sedan,* 122 Cal. App.2d 680, 683 [265 P.2d 176].) What is said in that document could hardly be more plain to the point that the trial court was ordering a new trial upon the ground of insufficiency of the evidence. Said the court in that document: 'Entirely separate and apart therefrom arises in the Court's mind a more serious question as to the weight, sufficiency and probative force of the evidence, including the evidentiary value of the physical facts, to justify the verdict which the jury returned.' This language is clearly the origin of the language used by the clerk in entering the minute order wherein he recites that the court has duly considered the evidence."

The order granting the motion for a new trial is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 8, 1962.