[Civ. No. 160.   Fifth Dist.   Jan. 18, 1963.]

ALLENE RUNYAN et al., Plaintiffs and Respondents, v. D. W. SEMMENS, Defendant and Appellant.

Zeff, Halley & Price and E. Dean Price for Defendant and Appellant.

Mitchell & Fulfer and E. Paul Fulfer for Plaintiffs and Respondents.

STONE, J.—Defendant doctor appeals from an order granting motion for a new trial after defense verdict in a malpractice action.

Plaintiffs are husband and wife and their interests are identical insofar as this appeal is concerned. For convenience, Allene Runyan, who was defendant's patient, is hereafter referred to as "plaintiff."

Defendant performed a partial hysterectomy upon plaintiff for removal of the cervical stump left from an operation performed several years earlier. Defendant testified that during the course of the operation plaintiff's bladder was "inadvertently" lacerated. This ¾-inch hole was immediately sutured. However, the operation required other suturing, in the course of which defendant "inadvertently" caught the right ureter with the suture cord and completely blocked it. This prevented the passage of urine through the ureter, a tube several inches long running from the kidney to the bladder. The ureter became distended with accumulated urine, which finally backed up into plaintiff's kidney. Within 24 hours plaintiff was in extreme pain, particularly in the abdominal region around the area of the operation. She notified defendant, who suspected the ureter was blocked off. His suspicions were confirmed by a pyelogram taken four days after the operation. Defendant discussed the results of the pyelogram test with Dr. Martin, a specialist in urology, who, to save plaintiff's kidney, performed an emergency operation, assisted by defendant.

During the course of the emergency corrective operation, the ureter was found to be "grossly enlarged." The sutures were located buried in the swollen ureter. To relieve the blocked area, a section of the ureter above the point where it had been inadvertently sutured was severed and tied, and the severed ureter was transplanted in the bladder. Two catheters were installed, and plaintiff remained in the hospital until April 19, at which time she was discharged to go home. Some two weeks after discharge from the hospital, defendant examined plaintiff to discover the cause of "leaking urine" and found a "fistula" or small hole in her bladder.

To close this fistula a series of six operations were performed, three by defendant and three by a specialist in San Francisco to whom plaintiff was referred. The final operation by the San Francisco specialist closed the fistula.

The trial court granted a new trial upon the grounds: "that the evidence is insufficient to justify the verdict; and that the verdict is against the law." The trial judge filed a lengthy and scholarly summation of the evidence and of the law pertaining to malpractice. In concluding that the evidence was insufficient to justify the verdict with regard to the "inadvertent" suturing of the ureter, the court referred to "the professional testimony of Dr. Martin that such an act was not in accord with medical standards in the locality; . . ."

We are aware that the opinion of the trial judge is not a part of the "judgment" or "order" (*Oldis* v. *La Societe Francaise,* 130 Cal.App.2d 461, 471-472 [279 P.2d 184]). It may, however, be considered by an appellate court in reviewing the exercise of discretion by the trial court (*Stockton Theatres, Inc.* v. *Palermo,* 124 Cal.App.2d 353, 357 [268 P.2d 799]), particularly with reference to an order granting a new trial because of insufficiency of the evidence. (*Union Sugar Co.* v. *Hollister Estate Co.,* 3 Cal.2d 740, 749 [47 P.2d 273].)

Defendant centers his attack upon the conclusion of the trial court that defendant's treatment did not conform to the standard of care exercised by doctors in the community. He argues that the evidence is all to the contrary, citing testimony of a number of expert witnesses to the effect that the care given plaintiff by defendant was in accordance with the ordinary standard of care in the area. There is, however, the contrary testimony of Dr. Martin to which the trial judge referred in his opinion. On direct examination he testified as follows:

"Q. Now, based upon that knowledge, Doctor, would you say that suturing of a ureter in connection with an operation such as Mrs. Runyan had on April the 7th, 1959, was in accordance with good practice and that standard of care?

"A. No, sir, but it happens every once in a while."

Defendant points out that on cross-examination Dr. Martin reversed himself by testifying that considering "all of the aspects" of the case, defendant's care of plaintiff conformed to "the general level of care and practice as practiced

by general practitioners in this community." Defendant suggests that the conflict has the effect of nullifying Dr. Martin's testimony, thus leaving the record barren of any substantial evidence that defendant did not conform to the standard of care exercised by general practitioners in the area.

That Dr. Martin's testimony was contradictory, or that there was a conflict between his testimony and that of the expert witnesses called by defendant, does not warrant a reversal of the order. ▉ Evidence relied upon by a trial court on motion for a new trial is not insubstantial simply because a conflict is apparent. (*Brooks* v. *Metropolitan Life Ins. Co.*, 27 Cal.2d 305, 307 [163 P.2d 689]; *Richardson* v. *Ham*, 44 Cal.2d 772, 775 [285 P.2d 269].) ▉ It is within the province of the trial court to resolve conflicts in the evidence in determining whether the issues should be retried. (*Williams* v. *Field Transp. Co.*, 28 Cal.2d 696, 698 [171 P.2d 722].) ▉ Nor does the fact that the court has drawn an inference from the conflicting evidence contrary to that drawn by the jury require a reversal of an order granting a new trial on the ground of insufficiency of the evidence. (3 Witkin, California Procedure, Attack on Judgment in Trial Court, § 15, p. 2060.)

Defendant suggests that the trial court abused its discretion by relying on just one part of Dr. Martin's conflicting testimony. ▉ The suggestion is without substance, since in weighing the evidence the trial court was free to disregard part of Dr. Martin's testimony and give credence to other parts. (*Ganahl* v. *Certain Individuals*, 204 Cal.App.2d 571, 581 [22 Cal.Rptr. 520].) From the opinion of the trial judge, it would appear that this is precisely what occurred.

▉ We conclude that the testimony of Dr. Martin on direct examination constitutes substantial evidence in support of the order granting the motion for new trial. Further, we conclude that the trial court did not abuse its discretion by relying upon Dr. Martin's answer to a specific question on direct examination and disregarding his conflicting answer on cross-examination to a general question on the same subject. (*Yarrow* v. *State of California*, 53 Cal.2d 427, 434 [2 Cal.Rptr. 137, 348 P.2d 687]; *Mertes* v. *Atchison, T. & S.F. Ry. Co.*, 206 Cal.App.2d 64, 69 [23 Cal.Rptr. 320].)

Since we have found no abuse of discretion in granting the new trial upon the ground the evidence is insufficient to

justify the verdict, it is unnecessary to discuss the other questions raised by defendant.

The order granting a new trial is affirmed.

Conley, P. J., and Brown, J., concurred.

A petition for a rehearing was denied February 13, 1963, and appellant's petition for a hearing by the Supreme Court was denied March 27, 1963.